No. 15-35592

_____

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

_____

LEE WALTERS, M.D., an Oregon resident,

Plaintiff-Appellant,

v.

VITAMIN SHOPPE INDUSTRIES, INC., a Delaware corporation,

Defendants-Appellee.

_____

Appeal from the United States District Court for the
District of Oregon (Portland Division)

Civil Case No. 3:14-cv-01173-PK (Judge Anna J. Brown)

_____

**APPELLANT'S OPENING BRIEF**

_____

Robert A. Curtis, SBN 203870
Justin P. Karczag, SBN 223764
**FOLEY BEZEK BEHLE &
CURTIS, LLP**
15 W. Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 962-9495
Facsimile: (805) 962-0722
Email: rcurtis@foleybezek.com;
        jkarczag@foleybezek.com

Brady Mertz, SBN 970814
**BRADY MERTZ PC**
345 Lincoln Street SE
Salem, OR 97302
Telephone: (503) 385-0121
Facsimile: (503) 375-2218
Email: brady@bradymertz.com

*Counsel for Plaintiff-Appellant Lee Walters, M.D.*

# TABLE OF CONTENTS

I.    STATEMENT OF JURISDICTION .................................................................. 1

II.   STATEMENT OF ISSUES PRESENTED FOR REVIEW ........................... 2

III.  STATEMENT OF THE CASE ..................................................................... 7

IV.   STATEMENT OF FACTS ............................................................................ 9

    A.  VSI ........................................................................................................... 9

    B.  VSI'S Deception ...................................................................................... 9

    C.  Walters ................................................................................................... 16

    D.  The Class ............................................................................................... 17

V.    SUMMARY OF ARGUMENT .................................................................. 20

VI.   ARGUMENT ............................................................................................. 25

    A.  Standard Of Review .............................................................................. 25

    B.  Claim 1, for Breach of Contract, was Improperly Dismissed
        Because the Allegations, Taken in the Light Most Favorable to
        Walters Establish That There Was a Contract That Was Breached ........ 26

    C.  Claim 2, for Breach of Warranty, was Improperly Dismissed
        Because There is so Exception for "Consumables" ................................ 33

    D.  Claim 3, for Unjust Enrichment, was Improperly Dismissed
        Because it's not a Given That a Contract was Formed, and, in any
        Event, Pleading in the Alternative is Allowed ....................................... 36

        1.  *Pleading in the Alternative is a Right* ........................................... 36

        2.  *Summary Judgment Was Improper Because No Notice*
           *Was Given* ..................................................................................... 38

        3.  *In any Event, any "Finding", That a Contract Existed was*
           *Premature, Absent Factual Findings* ........................................... 39

E.    Claim 4, for Fraud Because the Allegations, Taken in the Light Most Favorable to Walters Establish that Respondent's Conduct was Fraudulent ........................................................................................ 42

F.    Claim 5, for Violations of the UTPA, was Improperly Dismissed Because the Allegations, Taken in the Light Most Favorable to Walters Establish that Respondent's Violated the Statute, and Plead Ascertainable Damages ................................................................ 48

    1.    *The PDP Violates the FDA Regulations' Legal Obligation on Respondent to Disclose Certain Facts on the PDP* ................. 49

    2.    *The Magistrate Judge Without Citation to any Legal Authority Found That Respondent Caused Appellant Harm but not Ascertainable Loss* ........................................................... 55

G.    In the Alternative, the Complaint Could Have Been Amended to Cure Any Deficiencies. ....................................................................... 57

VII.  CONCLUSION ............................................................................................ 57

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A.P. Moller - Maersk A/S v. Taiwan Glass USA Sales Corp.*
663 F. Supp. 2d 1011, 1015-16, (D. Or. 2009) ............................................ 29, 30

*Bell Atl. Corp. v. Twombly*
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................ 25, 26

*Brazil v. Dole Food Co.*
935 F.Supp.2d 947 (N.D.Cal. 2013) ..................................................... 35

*Cook v. The MV Wasaborg*
189 F.Supp. 464 (D. Or. 1960) ............................................................ 40

*Davis v. HSBC Bank Nevada, N.A.*
691 F.3d 1152 (9th Cir., 2012) ............................................................ 47

*Deering-Milliken & Co. v. Modern-Aire of Hollywood, Inc.*
231 F.2d 623 (9th Cir. 1955) ........................................................ 41, 42

*Edwards v. Marin Park, Inc.*
356 F.3d 1058 (9th Cir. 2004) ............................................................ 25

*Flood v. Harrington*
532 F.2d 1248 (9th Cir. 1976) .............................................................. 1

*Grove v. Mead School Dist.*
753 F.2d 1528 (9th Cir. Wash. 1985) ..................................................... 38

*In re ConAgra Foods, Inc.*
908 F. Supp. 2d 1090 (C.D. Cal. 2012) ................................................. 35

*Joseph v. Donover Co.*
261 F.2d 812 (9th Cir. 1958) .............................................................. 41

*Kearney v. Equilon Enters., LLC*
65 F. Supp. 3d 1033 (D. Or. 2014) ....................................................... 27

*Knievel v. ESPN*
393 F.3d 1068 (9th Cir. 2005) ............................................................ 25

*Kreidler v. Taylor*
   473 F. Supp. 2d 1090 (D. Or. 2007) ............................................................ 44, 46

*Leonard F. v. Israel Discount Bank*
   199 F.3d 99 (2d Cir. 1999)............................................................................ 26

*Motorola, Inc. v. AU Optronics Corp.*
   785 F. Supp. 2d 835 (N.D. Cal. 2011) ........................................................ 37

*Pareto v. FDIC*
   139 F.3d 696 (9th Cir. 1998) ....................................................................... 25

*Placencia v. World Sav. Bank, FSB*
   2011 U.S. Dist. LEXIS 64831 (D.Or., 2011)...................................... 44, 46, 47

*Rec Boats, LLC v. RP/PHL Marine Leasing, Inc.*
   2012 U.S. Dist. LEXIS 182061 (D. Or. Dec. 26, 2012) ................................ 45

*Richards v. Home Depot, Inc.*
   456 F.3d 76 (2d Cir. 2006)........................................................................... 54

*Richards v. Mitcheff*
   696 F.3d 635 (7th Cir. 2012) ....................................................................... 26

*Townsend v. Columbia Operations*
   667 F.2d 844 (9th Cir. 1982) ....................................................................... 39

*Treefrog Devs., Inc. v. Seidio, Inc.*
   2013 U.S. Dist. LEXIS 110760 (S.D. Cal. Aug. 6, 2013) ............................ 37

*West Rail Constr. Co., LLC v. Inland Pac. Energy Ctr., LLC*
   2009 U.S. Dist. LEXIS 44954 (D. Or. May 26, 2009) .................................. 45

**STATE CASES**

*Bagley v. Mt. Bachelor, Inc.*
   356 Or. 543 (2014)........................................................................................ 33

*Feitler v. The Animation Celection, Inc.*
   170 Ore. App. 702 (Or. Ct. App. 2000) .................................................. 55, 56

*Fleming v. Kids & Kin Head Start*
   71 Ore. App. 718 (Or. Ct. App. 1985) ................................................. 26

*Heverly v. Kirkendall*
   257 Or 232, 478 P2d 381 (1970) ......................................................... 44

*Jules Levy & Bro. v. A. Mautz & Co.*
   16 Cal. App. 666 (Cal. App. 1911) ...................................................... 42

*Klussman v. Day*
   107 Or. 109 (1923) ............................................................................. 41

*Kretz v. Howard*
   220 Or. 73, 346 P.2d 93 (1959) .......................................................... 41

*Kubeck v. Consolidated Underwriters*
   267 Ore. 548 (Or. 1974) ..................................................................... 45

*Lefkowitz v. Great Minneapolis Surplus Store*
   86 N.W.2d 689 (1957) ........................................................................ 27

*Maeder Steel Products Co. v. Zanello*
   109 Ore. 562 (1923) ........................................................................... 41

*Medford Furniture & Hardware Co. v. Hanley*
   120 Or. 229 (1926) ............................................................................. 41

*Or. Pub. Emples. Ret. Bd. v. Simat, Helliesen & Eichner*
   191 Ore. App. 408 (Or. Ct. App. 2004) .............................................. 45

*Pollock v. D.R. Horton, Inc.-Portland*
   190 Ore. App. 1 (2003) ....................................................................... 43

*Scott v. Western International Surplus Sales, Inc.*
   267 Ore. 512 Or. 1973) ....................................................................... 56

*Tri-West Constr. Co. v. Hernandez*
   43 Ore. App. 961 (Or. Ct. App. (1979) .............................................. 50

*Union Oil Co. v. Lull*
   220 Ore. 412 (Or. 1960) ..................................................................... 29

**STATUTES**

21 CFR § 101.1.................................................................................... 26

21 CFR § 101.105...................................................................... 32, 33, 48

28 USC § 1291 ..................................................................................... 1

28 USC § 1331 ..................................................................................... 1

28 USC § 1332 ..................................................................................... 1

28 USC § 1453 ..................................................................................... 1

Cal. Civ. Code § 1791(a).................................................................... 35

Cal. Civ. Code § 1792 ........................................................................ 35

Fed. R. App. P. 4 .................................................................................. 1

## I.    Statement of Jurisdiction

The District Court had subject matter jurisdiction over this Class Action pursuant to 28 USC § 1331, the Class Action Fairness Act of 2005, codified in part at 28 USC § 1332(d) and § 1453 because: (i) it consisted of at least 100 proposed class members; (ii) the citizenship of at least one putative class member was different from that of the defendant; and (iii) the aggregate amount plead in controversy exceeded $5,000,000.

This Court has jurisdiction pursuant to 28 USC § 1291, as a District Court's order dismissing a complaint with prejudice is an appealable final decision. *Flood v. Harrington,* 532 F.2d 1248, 1250 (9th Cir. 1976).

The District Court entered its order adopting the Magistrate Judge's Findings and Recommendations ("FR"), granting Respondent's Motion to Dismiss, and dismissing the Second Amended Complaint ("SAC") in its entirety, with prejudice on June 25, 2015; the judgment was entered the same day. ER3-6[1] [Docs.[2] 49 and 50].  Appellant Lee Walters, MD, ("Walters") timely filed a Notice of Appeal on July 17, 2015.  *See* FED. R. APP. P. 4 (a)(2), 4(a)(1)(A). This appeal is from the granting of a MTD reduced to a judgment.

---

[1] "ER#" = Appellant's Excerpts of Record.
[2] "Doc" = District Court docket.

## II.    Statement of Issues Presented for Review

Appellant's SAC pleads five Claims against Respondent: (1) Claim 1, Breach of Contract on behalf of the National Class (ER37-38, ¶¶ 47-52); (2) Claim 2, Breach of Warranty (Magnusson Moss) on behalf of the National Class (ER38-39, ¶¶ 53-57); (3) Claim 3, Unjust Enrichment (in the alternative) on behalf of the National Class (ER 39-40, ¶¶ 58-66); (4) Claim 4, Fraud on behalf of the National Class and Oregon Subclass (ER40, ¶¶ 67-76); and (5) Claim 5, State Unlawful Trade Practices ("UTPA") on behalf of the Oregon Subclass (ER41, ¶¶ 77-81).[3] The Magistrate Judge issued FR, which the District Court then adopted, granting Respondents' MTD in full, dismissing each claim.

1. As to Claims 1 and 2 (contract and warranty), the allegations concerning the existence of a contract and a warranty are not ones which allege that there was a single piece of paper, executed by both parties, evidencing a contract, or a separately provided piece of paper from Respondent to Appellant, entitled "warranty". Instead, the allegations are that Appellant was a customer of Vitamin Shoppe Industries (the "Vitamin Shoppe" or "VSI"), who purchased one of its supplements, and received less than what he paid for. Specifically, the product

---

[3] There are three points for clarification. First, in the briefing on the MTD, Appellant made it clear that he was pursuing the federal MMWA claim and not an Oregon state law warranty claim. Second, the caption page of the SAC erroneously lists four claims; there are five claims pleaded in SAC. Fourth, for the UTPA claim, Appellant simply needed to allow the 30 days notice requirement in the statute to run to be able amend to seek money damages.

appeared to contain one quantity of vitamin/supplement for the price paid, and instead it contained less.

When Walters paid for the Vitamin Shoppe's house-brand supplement, a contract and warranty were formed. But, that contract is comprised of the facts of the overall transaction, the exchange of money (or credit), the purchase receipt, and the advertisement on the display of the box/packet/bottle/etc., which the consumer views when selecting the product for purchase. Lacking a single integrated agreement embodied in a piece of paper signed by both parties, the components and elements of the contract and warranty are hotly disputed, such that a finder of fact must ascertain what those are. And, once those are ascertained, the parties' liabilities, obligations, benefits and rights can then be determined as a matter of law.

But here, the Magistrate Judge, on a MTD, entered the role of fact finder, and made his own determination of the conflicting evidence to find that the components and elements that he selected as comprising the contract, which he determined that when viewed as a whole, showed that there was no breach of contract or warranty.

Given that such a fact-finding and factual dispute resolution mission is not proper on a MTD, did the Court err in granting the MTD this first and second claims for relief?

2.    As to Claim 2 (warranty), the Magistrate Judge was inclined to recommend dismissal of the claim on the grounds that Oregon state warranty law expressly excludes "consumables", and such exclusion would apply to Respondent's supplements at issue here.  In response, Appellant clarified that he was proceeding solely under the Federal Magnusson Moss Warranty Act ("MMWA"), and that while Oregon state warranty law excludes "consumables", the MMWA does not. But, the Magistrate Judge recommended dismissal of the claim anyway, and the District Court adopted that recommendation.  Should the District Court's decision be overturned?

3.  As to Claim 3 (Unjust Enrichment), the Court dismissed that claim on the basis that a contract existed.  In so doing, the Court ignored the well-established body of law that alternative pleading is allowed—encouraged even—and, improperly *sua sponte* converted the motion from a MTD into a summary judgment motion.  Moreover, the Court ignored the fact that there were contested factual contentions as to whether a contract was formed, which required a fact-finding mission, including the taking of evidence, testimony, etc., that was not possible on a 12(b)(6).  Given that alternative pleading is allowed, that *sua sponte* summary judgments are not allowed, and that contested fact-finding was required where the issue of whether a contract was formed, and if so, what its terms were, is disputed, did the Court err in dismissing the third claim for relief on this ground?

4.  As to Claim 4 (fraud), the results were pre-ordained by the Magistrate Judge's determination on Claim 1 of whether there was a contract, what all of its terms were, and, that none of its terms were in fact breached.  Taking this as an established fact, the Magistrate Judge proceeded to determine that since the allegations concern a contract that was not breached, there could be nothing unfair about it.  And he specifically found that: (1) fraud cannot be made out where all contract terms are "available" to the plaintiff and (2) that reliance fails when the plaintiff "fails to read" the contract. ER20-22.  But, the legal authority cited by the Court does not support those propositions when applied to the facts present here. And, the published authority is actually to the contrary.

In addition, the Magistrate Judge found there was nothing misleading about providing certain required facts on the Principal Display Panel ("PDP"), but then information that changes those facts, e.g., a "take-back", on the back of the container in smaller print, arguing by analogy to contract law with fine print. However, the Magistrate Judge never looked at the products themselves to analyze the disclosure as it actually appeared and never took any evidence as to how the products appeared in the stores or what the purchasing process was like.

And, the Magistrate Judge also ignored the fact that the FDA regulations have certain requirements for supplement labeling, including requiring certain information on the PDP, which it is undisputed Respondent did not do here.

Specifically, if someone sells a container of supplements and puts information on the PDP (the one that faces the consumer), that says for example "1,000mg" "Vitamin C" and "100 tablets", then the product should contain a hundred tablets which contain 1,000mg of Vitamin C. If instead, the tablets contain something else, say, 200mg, then that must be disclosed on the PDP itself. That was not done here. Thus, it is proper to have an inference that the label is, as Appellant claims, misleading, for not having the correct information on the PDP. While there can be no claim for mere violation of the regulations, the regulations themselves provide evidence supporting an inference that sales of supplements are misleading when certain information is not disclosed in a certain manner.

Given all of these errors, did the District Court err adopting the Recommendation to dismiss this claim?

5. As to Claim 5 (UTPA), the analysis was the same as for Claim 4, and thus fails on the same basis. In addition, contrary to the Magistrate Judge's finding, case law shows that reliance is not necessary for a UTPA claim. And, the UTPA specifically prohibits the failure to disclose information to another party that the defendant is obligated to disclose by law. Here, the FDA specifically obligates manufacturers of nutritional supplements to put all necessary information on the PDP. And, Respondent did not comply with that obligation. Thus, it is undisputed that the UTPA was violated.

Finally, the Magistrate Judge's additional basis for recommending dismissal was that Appellant failed to plead monetary damages, and so lacked the requisite "ascertainable harm" element of the statute. But, the facts are that Appellant did seek monetary damages. And, even if the facts were otherwise, the law does not require monetary damages to pursue a UTPA claim. And, even if it did, such damages are readily ascertainable from the allegations of the Complaint. If Appellant paid for a certain volume of product, but only received half of it, then Appellant should receive half his money back.

Lacking any justification to dismiss the UTPA claim in the first instance, should the District Court's decision to dismiss it be overturned?

### III.  Statement of the Case

Respondent, Vitamin Shoppe, a Delaware Company, headquartered in New Jersey, markets and sells dietary supplements under its eponymous trade name and label, at its eponymous retail stores, located throughout the United States, including Oregon. ER26-27, ¶¶ 2, 3, 7. It sells both national brands and its proprietary brands of nutritional supplements. ER27, ¶ 7. Typically, the competing brands and the house brand of the same or similar nutritional supplement will be located near or adjacent to each other. ER27-28, ¶ 12. The Vitamin Shoppe's products' front facing portion of the packaging, known as the "PDP", by the United States Food and Drug Agency, mislead the consumer into

thinking that they are purchasing more of the nutritional supplement than they actually are. ER20-21, ¶¶ 12-18, 20-21.

Appellant Walters, an Oregon resident, purchased one of the Vitamin Shoppe's mislabeled products, Calcium 1000mg Carmel Chews, unaware that the package misrepresented the amount of milligrams per unit of the product and/or the overall amount of the supplement contained within the package. On July 23, 2014, Walters filed a putative class action lawsuit, which was subsequently amended twice (before any attack on the pleading was filed), to become the Second Amended Complaint ("SAC"), dated November 24, 2014. ER46-48. In the SAC, on behalf of himself, and a putative national class and Oregon subclass, Walters alleged five claims against Respondent: (1) Breach of Contract (ER 37-38, ¶¶ 47-52); (2) Breach of Warranty (ER38-39, ¶¶ 53-57); (3), Unjust Enrichment (ER 39-40, ¶¶ 58-66); (4) Fraud (ER 40, ¶¶ 67-76); and (5) UTPA (ER 41, ¶¶ 77-81).

On December 11, 2014, the Vitamin Shoppe filed an over-length MTD, or in the alternative, motion to strike the SAC. ER48. On February 11, 2015, the Magistrate Judge heard argument of the parties, and requested further limited briefing. ER49. There was no notice that he was converting the MTD into a motion for summary judgment. On May 13, 2015, he issued his FR, granting the MTD as to all claims, and in so doing, converting it to a summary judgment

motion as to Claim 2 (UTPA). ER23. And, on June 25, 2015, the District Court Judge adopted the FR, and entered a Judgment against Walters. ER3-6.

Walters timely filed a notice of appeal on July 17, 2015. ER1-2. Walters filed a streamlined request to have the Opening Briefing filing deadline extended to November 25, 2015, the date this brief is filed.

## IV. **Statement of Facts**

### A. **VSI**

The Vitamin Shoppe is incorporated in Delaware, and headquartered in New Jersey. ER27, ¶ 6. It is a retailer of nutritional products. It sells both national brands and proprietary brands of vitamins, minerals, herbs, specialty supplements, sports nutrition and other health and wellness products to customers located primarily in the United States. ER27, ¶ 7. The Vitamin Shoppe operates from North Bergen, New Jersey. ER27, ¶ 7.

### B. **VSI's Deception**

Respondent sold both the "house brand" VSI Products labeled with the it trade name on the label, and competing nutritional supplements and products labeled with the trade or brand names of other manufacturers. Typically, a particular type of nutritional supplement, such as Respondent's house brand Vitamin C, will be shelved near or adjacent to the same product offering by a competitor. ER27-28 ¶ 12.

The United States Food and Drug Administration ("FDA") calls the face or front-facing portion of packaging for nutritional products the "PDP" (alternatively referred to herein as "PDP"). The FDA defines this as: "the portion of the package that is most likely to be seen by the consumer at the time of display for retail purchase." ER28, ¶ 13.

The PDP provides information that allows purchasers to determine the contents of the package before them, and to comparison shop between various manufacturers and brands of the same or similar VMS product. This information typically includes:

(1) the type or name of the VMS product,

(2) the quantity or amount of the active ingredient, typically in milligrams or international units,

(3) the number of tablets, capsules, chews, or other individual units contained within the package, and

(4) the price.

At Respondent's stores, where the price is not displayed on the PDP, it is typically displayed within plain sight and near or adjacent to the package. ER 28, ¶ 14.

By shelving same or similar VMS products near or adjacent to each other, and with the PDPs of each package or container turned to face toward the

consumer, Appellant provides consumers an opportunity to use the PDPs to compare prices and cost per unit of its Product with competing product from other manufacturers.  ER28, ¶ 15.

Examples of the PDP from an Accused Products L-Arginine- Ornithine 2000 mg ("LAO"), and Calcium 1000 mg, are below:





ER28-29, ¶ 16-17.

As can be seen from the images, with regard to the first product, the PDP shows that there are 300 capsules of 2000mg of LAO being purchased. And, similarly with Calcium, the PDP shows there are 60 1000mg chews. Thus, if a consumer wants to take 2000mg of LAO each day, they know that if they purchase Respondent's product, as shown on the PDP, they will have a ten month supply of LAO. Similarly, if a consumer wants to take 1000mg of Calcium daily, per the PDP, if they purchase Respondent's product, they will have 2 months worth of

Calcium.

Whatever is displayed on the PDP is so integral to the purchase of the product that the FDA has codified what the PDP must contain. And, regardless of whether that information is provided on any other place on the product (e.g., the back of the product), such information must ALSO be included on the front-facing PDP.

21 C.F.R. 101.105 states: "the PDP of a food in package form shall bear a declaration of the net quantity of the contents."

Subsection (c) states: "When the declaration of quantity of contents by numerical count does not give adequate information as to the quantity of food in the package, it shall be **combined** with such statement of weight, **measure**, or size of the individual units of the foods as will provide such information."

Subsection (e) states: "The declaration shall be located on the PDP of the label, and with respect to packages bearing alternate principal panels, it shall be duplicated on each…"

And, 21 C.F.R. 101.36, entitled "Nutrition labeling of dietary supplements" states: "The label of a dietary supplement that is offered for sale shall bear nutrition labeling in accordance with this regulation…."[4]

_____

[4] There is an exemption then listed, which it is undisputed does not apply here.

Here, the "net quantity of the contents" is plainly how much supplement the package contains or how much supplement each capsule, chew, pill, etc., contains. If Respondent's Calcium 1,000mg chews actually contained 1,000mg of calcium (or if the package contained 60,000mg of calcium), or if the LAO 2,000mg bottle actually contained capsules of 2,000mg of LAO (or if the bottle contained 600,000mg of LAO), then there would be no dispute. But, the problem is that is not the case.

In fact, each of Respondent's Calcium 1000mg chews actually contain only 500mg of Calcium (and thus the package contained 30,000mg of Calcium). And, each of Respondent's LAO 2,000mg capsules only contain 1,000mg of LAO (and the bottle contains only 300,000mg of LAO). ER30-32, ¶¶ 20-27. Paragraph 27 of the SAC shows for each product what the PDP states the quantity to be and what the net quantity truly is. Respondent's PDP's misrepresent the quantity sold by as little as 50% to as much as 86%. ER31, ¶ 27.

Yet, there is no way from the information available on the PDP that anyone could ascertain that fact. This is contrary to both the plain meaning of the information displayed on the PDP, as well as FDA regulations. How does Respondent try to overcome this failing?

The answer is, by providing in much smaller type on the "Supplemental Facts Panel" "SFP") *on the back* of the package/bottle, that a serving size is two

chews or two capsules. ER30-32, ¶¶ 20-27. But, there is nothing on the PDP that says that any of the information is subject to modification or alteration by turning to the back of the package/bottle. Thus, a consumer who views the PDP on the shelf, places the supplement into his shopping cart, and then pays at the register has no idea that he or she is not getting the net quantity of what is advertised, and is instead getting less—up to half as much. Given the big bold large font type on the PDP, which contains only the amount of capsules/tablets/chews and the amount that each should have, it could be that the consumer might never ascertain that buried within the small print on the back is something that tries to "take back" that representation.

Moreover, as set forth in paragraph 3 of the SAC, this action concerns a specific list of Respondent's supplements. And, another fact about these specifically identified supplements that makes their PDPs particularly misleading is that Respondent's other supplements that have a "serving size" of more than one unit, graphically disclose that fact <u>on the PDP</u>. Specifically, by example, they state on the PDP "per 2 softgels":



ER31, ¶ 26.

Thus, those that disclose, are not misleading, and are not part of the products at issue. But, additional confusion is added when Respondent has products with a PDP that plainly sets forth the unit measure (e.g., two softgels) that have sufficient information, but then other products do not.

### C. Walters

Appellant, is an Oregon resident who purchased one or more of the accused products from Respondent at a store in Oregon. At the time of the purchase,

Appellant was unaware that the package he purchased misrepresented the amount of milligrams per unit of the product, or the overall amount of the supplement contained within the package. Appellant would not have purchased the Accused VSI Product if the actual amount of product per unit had been disclosed to him on the PDP. ER32, ¶ 28-29.

### D. The Class

Appellant brought this case on behalf of himself and on behalf of all similarly situated persons who purchased one or more of the Accused products within the United States, and within any Class State as the Court may determine appropriate for class certification treatment pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). ER32-33 ¶ 30. The Class and Subclasses of persons that Appellant sought to represent are defined as:

The "Nationwide Class" defined as: all persons within the United States who at any time during the applicable class period purchased one or more of the Accused VSI Products from a retail store, through the internet, or catalogues.

The "Oregon Subclass" defined as: all Oregon residents who at any time during the applicable class period purchased one or more of the Accused VSI Products from a retail store, through the internet, or catalogues.[5] ER33, ¶ 31.

---

[5] There was also a California Subclass alleged, which was never ruled upon by the Court because there was no named plaintiff to pursue it. It was pleaded by a "Roe" plaintiff. Because the California subclass was not active and was not briefed

There were substantial common issues of law and fact present for the Class and Subclass. ER34-35, ¶ 36.

For the National Class, common issues of law and fact include:

**(a)**      **Was a contract formed between Defendant and the Class Members?**

**(b)**      **If a contract was formed, what were its terms?**

(c)       If a contract was formed, did Defendants breach any of its terms?

....

(e)       What is the appropriate measure of damages for Defendant's breach of contract?

....

(g)       Did the labels on the Accused VSI Products create an express or implied warranty?

(h)       If the labels on the Accused VSI Products created a warranty, what were the terms?

(i)       If a warranty was created, did Defendant breach its terms?

....

(k)       What is the appropriate measure of damages for Defendant's

below, references to the particulars of it will generally be omitted to avoid confusion.

breach of warranty?

(m) Did Defendant's conduct constitute fraud?

(n) If so, what is the appropriate measure of damages?

....

(p) Was Defendant unjustly enriched by its conduct in a way that caused harm to plaintiff and the class?

(q) If so, what is the appropriate measure of damages?

(r) Is the National Class entitled to an injunction or other equitable relief? ER34-35, ¶ 37 (emphasis added).

The Oregon Subclass has those common questions of law and fact plus:

(s) Did Defendant represent that its goods have characteristics, ingredients, uses, benefits, quantities or qualities that they do not have in violation of ORS 646.608(1)(e)?

(t) Did Defendant make a false or misleading representation of fact concerning the offering price of, or the cost for goods in violation of ORS 646.608(1)(s)?

(u) Did Defendant engage in unfair or deceptive conduct in trade or commerce in violation of ORS 646.608(1)(u)? ER35, ¶ 38.

Monetary damages (in addition to equitable relief on other Claims) were sought for the National Class as to the Claims for breach of contract, breach of

warranty, and fraud (ER43, ¶¶ I-K) and money damages was alleged to be sought on behalf of the Oregon Subclass for the UTPA claim, once the 30-day notice requirement under ORCP 32H was satisfied (ER41, ¶ 81).

## V.    **Summary of Argument**

Although only explicitly stated in the context of the second claim for UTPA, the error that appears to permeate the ruling granting the MTD was the Magistrate Judge's looking beyond the allegations of the pleadings, and making factual determinations that are improper on a 12(b)(6).   In fact, absent notice that the motion is being converted to a motion for summary judgment (like the lack of notice provided by the Magistrate Judge here), it is also improper in the context of summary judgment.

Although the case does concern a breach of contract claim, this is not the typical breach of contract case.   Here, there is no writing executed by both parties that can provide any indication of the meeting of the minds of the parties to a written agreement that the prototypical breach of contract case involves.   Instead, here, there was a transaction from which a contractual agreement is alleged to have occurred.   But, it is proven by the transaction, not solely by any writing executed by the parties.   That transaction involves the payment of money for a product, and what the Appellant thought he was getting, what the Respondent was obligated to provide, and what, if anything, transpired instead.

Here, the Magistrate Judge made the factual determination that a contract did exist, and, reviewed all of the allegations of the complaint, disregarded some and embraced others, to find that the contract that did exist contained all of the terms of the packaging, that its layout and presentation was not confusing or misleading, and that there was a meeting of the minds when it came to what Appellant was purchasing. From that conclusion, an enforceable contract and all of its terms, including those that solely benefitted Appellant, and including terms that violated FDA regulations, the Magistrate Judge concluded that there could not only be no breach of contract claim, but also no UTPA claim and no unjust enrichment claim. Finally, the Magistrate Judge found that no breach of warranty claim under Magnusson Moss could apply because the produce was a "consumable". The District Court adopted all of these findings. Both were wrong.

*First*, as to the breach of contract (Claim 1), when it comes to a contract that is not a single integrated executed agreement, plaintiffs' allegation that the contract did not contain the terms on the back in small print that contradicted the terms on the PDP, or, that those terms were unenforceable, is not properly determinable on a MTD because they require a resolution of disputed facts. Indeed, the Court found the terms to be an enforceable part of "the contract", despite never even viewing the packages or bottles that the products came in. The Magistrate Judge apparently determined that regardless of how the product is displayed, regardless of how

readable the font is, or how buried the information is depending upon the type of packaging, uniformly, those terms are enforceable as a matter of law. That was erroneous.

*Second,* as to Breach of Warranty MMWA (Claim 2), the Magistrate Judge recommended that because Oregon State law excluded consumables from its scope, this exclusion modified the MMWA claim, barring it as a matter of law. But, no controlling authority has reached that conclusion. And, District Courts have come to the opposite conclusion. Thus, this too was error.

*Third*, as to the unjust enrichment (Claim 3), the Magistrate Judge ignored the law specifically allowing pleading in the alternative. The Magistrate Judge also appears to have converted the MTD into a summary judgment by making the factual finding that an enforceable contract did exist, and on that basis denying the unjust enrichment claim. But, absent notice of such a conversion, the conclusion, even if correct, was error. Moreover, the Court ignored the fact that there were contested factual contentions as to whether a contract was formed, which required a fact-finding mission, including the taking of evidence, testimony, etc., that was not possible on a 12(b)(6). Those errors were adopted by the District Court when it approved the Magistrate Judge's FR.

*Fourth*, as to the fraud claim (Claim 4), the Magistrate Judge found that Respondent's sale of supplements was not misleading because regardless of

whether the PDP led the consumer to rely on a misleading statement, the small print on the back of the bottle provided a full explanation or "take-back", such that nothing about the product sale was misleading.  Further, the Magistrate Judge found it irrelevant that the FDA regulation, which is promulgated to protect consumers from misleading marketing and sales practices, requires that ALL such information must be on the product's PDP.  And, the District Judge agreed.  But, the fact that it is not, although not solely actionable as a violation of the FDA regulations, can still provide *evidence* that the practice is misleading.  Moreover, there is no decision that prohibits the violation of a statute that does not have a private right of action from forming the basis for a *state law* violation of an unfair trade practice.

*Fifth,* as to the UTPA violation (Claim 5), the analysis was the same as for Claim 4, and the District Court's order of dismissal as to this claim thus fails on the same basis.  In addition, case law shows that reliance is not necessarily a requirement for a UTPA claim.  Likewise, regardless of any and all questions of whatever information was on the back panel, case law establishes that the UTPA makes actionable the failure to disclose information to another party that the defendant is obligated to disclose by law.  Here, the FDA specifically obligates manufacturers of nutritional supplements to put all necessary information *on the PDP*.  And, it is uncontested that Respondent failed to disclose the information as

required. This alone is sufficient to warrant reversal of the District Court.

Similarly, the Magistrate Judge (without citation to any legal authority) found that Appellant failed to plead monetary damages, and thus failed to meet the "ascertainable injury" requirement for the UTPA claim. However, the law does not require monetary damages for a UTPA claim. And, even if it did, Appellant did plead monetary damages monetary damages as allowed under ORCO 32(H), which requires a notice period to expire before monetary damages claims can be pleaded.[6] But, even if he did not, monetary damages can be ascertained. This secondary reason for dismissing the UTPA claim is on shakier ground than the first.

*Finally*, as a general proposition, because of the unwarranted and unanticipated conversion of the MTD into a motion for summary judgment, Appellant was improperly prevented from presenting evidence that supported his allegations. Had Appellant been given proper notice, he could have provided evidence of the nature and manner of the placement of the product, of Respondent's marketing campaigns, which are both designed to deceive—all of which he was denied.

Because the dismissal of each of the claims and of the action as a whole was

---

[6] Note, the fact that a notice period is established by the statute, provides a strong inference that that a UTPA Claim should, at least for a time, always not specifically plead monetary damages.

improper, this Court should vacate the Judgment of the District Court, and reinstate all of Appellant's claims.

## VI. <u>Argument</u>

### A. **Standard of Review**

The District Court granted the Vitamin Shoppe's 12(b)(6) MTD Walters' SAC with prejudice. ER6. The Appellate Court reviews *de novo* a District Court's grant of a MTD pursuant to Rule 12(b)(6). *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1061 (9th Cir. 2004). On a MTD, the Appellate Court accepts "all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). On appeal, the Court is limited to "the allegations of material facts set forth in the complaint, which [are] read in the light most favorable to the non-moving party and which, together with all reasonable inferences therefrom, [are taken] to be true." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Dismissal of the complaint is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 548, 127 S. Ct. 1955, 1961, 167 L. Ed. 2d 929, 935 (2007).

A district court must confine its consideration on a Rule 12(b)(6) motion "to facts stated on the face of the complaint, in documents appended to the complaint

or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank,* 199 F.3d 99, 107 (2d Cir. 1999).

"Neither *Twombly* nor *Iqbal* has changed the rule that judges must not make findings of fact at the pleading stage." *Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012).

### B. Claim 1, for Breach of Contract, was Improperly Dismissed Because the Allegations, Taken in the Light Most Favorable to Walters Establish that There Was a Contract That Was Breached.

The elements of breach of contract are: (1) existence of the contract and its relevant terms, (2) performance and lack of breach by the plaintiff or excuse for nonperformance, (3) breach by the defendant, and (4) damages. *Fleming v. Kids & Kin Head Start*, 71 Ore. App. 718, 721 (Or. Ct. App. 1985). Here, the elements are met. Respondent made a unilateral offer through its PDP, which contained all of the necessary terms. There was a price term, and the PDP[7] indicated the type of supplement being offered, and it purported to tell the purchaser both the number of units, and the quantity of supplement in each unit. ER28-32, ¶¶ 13-27.

---

[7] The face or front facing portion of packaging for nutritional products is called the "PDP" by the United States Food and Drug Administration ("FDA"). The FDA defines this as the portion of the package that is most likely to be seen by the consumer at the time of display for retail purchase. 21 CFR 101.1.

The concept of an advertisement comprising an offer was recently addressed in an advertising-based class action claim in the District of Oregon. In *Kearney v. Equilon Enters., LLC*, 65 F. Supp. 3d 1033 (D. Or. 2014) the issue was whether the "Ski Free" advertisement and promotion posted at Shell fuel stations within five states constituted a contract which could be breached. Shell promised motorists that they would receive a "free lift ticket" if they purchased 10 gallons of fuel. Instead, defendant gave purchasers a "buy one get one free" coupon instead of a coupon for a free lift ticket:

> [I]f an advertisement is "clear, definite, and explicit, and leaves nothing open for negotiation," then the advertisement "constitutes an offer, acceptance of which will complete the contract." *Lefkowitz v. Great Minneapolis Surplus Store*, 86 N.W.2d 689, 691 (1957). *Kearney*, at 1038.

Here, like in *Kearney,* there was no written executed contract for sale of goods. Rather, there was a PDP offering a clear, definite and explicit (a) type, (b) amount, and (c) quantity of nutritional supplement that left nothing open for negotiation: (a) LAO, (b) 2000 milligrams and (c) 300 capsules of it. Appellant alleged that this constituted an offer (ER37, ¶¶ 48-49), which he then accepted when he purchased the product (ER37, ¶ 50), thus "completing the contract". And, that the contract was breached when Appellant actually received less than what was offered on the PDP, and Appellant was damaged. ER38, ¶¶ 51-52.

However, the Magistrate Judge was confused when he determined that the contract consisted of more than what Plaintiff alleged, including the "small print" on the bottom back of the bottle or package that "took back" the offer by trying to explain that (a) a "serving size" was two capsules (or chews), (b) it was the "serving size" that was 2,000 milligrams, not the capsules that the PDP described as being 2,000 milligrams, and (c) despite what the PDP said, Appellant was only getting half or less of the product offered.

The Magistrate Judge, analogizing to traditional written contracts, concluded that the "take back" language on the back of the product, which Appellant was unaware of, was part of the contract, and was enforceable against Appellant, whether he was aware of it or not.

But, not only is that analogy suspect (as discussed below), but case law firmly establishes that it is not true in circumstances similar to the present one. For example, in *Union Oil Co. v. Lull,* 220 Ore. 412, 419-420 (Or. 1960), the Oregon Supreme Court confronted a circumstance where the plaintiff credit card company was seeking to enforce a term against the defendant cardholder, and that term was "printed in very small print on the back of the card, which is approximately 1¾ by 3¼ inches in size. Had the issue been properly raised, the foregoing circumstances, together with proof that defendant was not aware of the conditions, would have presented a jury question as to whether the printed conditions

constituted a party of the contract. [citations].]" *Id.*

In the case at bar, the vitamin packages and supplements (which were not considered as evidence) are in fact small size containers (certainly far, far, far smaller than 8.5" x 11" standard written pages for contracts), and they have uneven curved/crinkled surfaces, and it was alleged that the "serving size" information was buried in a table on the bottom back of the bottle/package in small print. This is precisely on par with the facts in *Union Oil*, consequently, at a bare minimum, under *Union Oil*, it was a question of fact as to whether that information was part of the contract. The District of Oregon has acknowledged and applied this legal principle as well, even in the stricter context of a traditional written agreement (rather than a card or packaging)

In *A.P. Moller - Maersk A/S v. Taiwan Glass USA Sales Corp.*, 663 F. Supp. 2d 1011, 1015-16, (D. Or. 2009), the Court acknowledged the principle, although found *after a trial on the merits*, that the facts demanded the opposite result:

> In other contexts, a party to a contract is bound by all terms, even if the party is unaware of them, unless there are special circumstances making it difficult to determine the terms. "[I]n the absence of special circumstances an insured is bound by the terms of an insurance policy purchased by him even though he is unaware of those terms because he has failed to read the policy, or having read the policy misunderstands it." [citation] (insured not bound by policy exclusion because it was contained in a single sentence, two lines long, on page 20 of a 35-page policy and insurance agent knew exclusion would cause a problem but did not mention it to the insured); [citation] (when the terms are stated on the back of a gasoline credit card, a "person is not bound by the terms of a written

agreement if he has no knowledge of such terms and if, because of the manner in which they are embodied in the instrument, a reasonable person would not be led to suspect that the terms were a part of the contract").

There are no such special circumstances here. The front of the bills of lading call out the existence of the additional terms. The front of this document is not densely filled with text. Most of the page has boxes filled with minimal information. The language referring to the additional terms is in the only paragraph of text on the page. Although the print is small, there is so little text that reading it would not be difficult. Taiwan Glass could have requested a copy of the back of the bill of lading.

In the case at bar, *none* of the determinative facts were present, and, in fact, the opposite circumstances exist. Here, unlike *A. P. Moller,* the PDP did NOT call out the existence of *any* additional terms anywhere. Here, unlike, *A. P. Moller*, the PDP IS densely filled with text. Here, unlike in *A. P. Moller,* the additional term that Respondent is relying upon in the back panel IS densely filled with text.

Thus, here, Appellant specifically pleaded the necessary allegations to ensure that, at the least, there was a disputed issue of fact as to whether the "serving size" information was part of the contract. As alleged in the SAC at ¶¶ 22-25:

> 22. In much smaller type the on "Supplemental Facts Panel" located on the back of the bottle or package and shelved to face away from the consumer, Defendant indicated that "serving size" was two capsules. The 2000 mg representation on the PDP was therefore based on this "serving size." Nothing on the PDP indicated that the 2000 mg dosage was predicated on consumption of more than one capsule, or that it was not an accurate representation of the quantity of L-Arginine-Ornithine per capsule.

23. Similarly, the PDP on packaging for Defendant's Calcium 1000 mg Carmel Chews represented that the package contained "Calcium 1000 mg Caramel Chews" and that "60 SOFT CHEWS" were inside the package.

24. Instead, the package for the Calcium 1000 mg Carmel Chews contained 60 soft chews that each contained 500 mg of calcium.

25. In much smaller type the on "Supplemental Facts Panel," located on the back of the packaging for the Calcium 1000 mg Carmel Chews and shelved to face away from the consumer, Defendant indicated that a "serving size" was two soft chews. The 1000 mg representation on the PDP was therefore based on this "serving size" of two soft chews. Nothing on the PDP indicated that the 1000 mg dosage was predicated on consumption of more than one soft chew, or that it was not an accurate representation of the quantity of Calcium per each soft chew.

Consequently, the District Court erred in dismissing this claim based upon the Magistrate Judge's erroneous findings of fact on Respondent's MTD.

But, even if there was not a disputed issue of fact, incorporation of the "take-back" language on the rear panel of the product must be rejected because this would make the "contract" illegal under federal law, as it would violate the FDA guidelines.

First, the FDA guideline for supplement labeling requires that accurate information regarding the contents of the package to be displayed on the PDP. The following questions and answers appear on the FDA website:

**Answers**

1. **What is the net quantity of contents statement for a dietary supplement?**

    The net quantity of contents statement for a dietary supplement is the statement that informs consumers of the amount of dietary supplement that is in the container or package.

    21 CFR 101.105(a)

2. **Where must I locate the net quantity of contents statement on my label?**

    You must locate the net quantity of contents statement on your product label as a distinct item in the bottom 30 percent of the PDP, in lines generally parallel with the base of the container. If the PDP of your product is 5 square inches or less, the requirement for placement within the bottom 30 percent does not apply when the declaration of net quantity of contents meets the other requirements of 21 CFR 101.

    21 CFR 101.105(f)

3. **How must I express the net quantity of contents statement on my label?**

    You must express the net quantity of contents statement in either weight, measure, numerical count or a combination of numerical count and weight or measure. When you express this quantity as a weight or measure, you must specify both metric (grams, kilograms, milliliters, or liters) and U.S. Customary System (ounces, pounds, or fluid ounces) terms.

    Public Law 102-329, August 3, 1992 and 21 CFR 101.105. *http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsR egulatoryInformation/DietarySupplements/ucm070596.htm*

In other words, defendant's scheme of seeming compliance with the FDA rules regarding Primary Display Panels (albeit accomplished through false statements), followed by its retraction / modification in fine print on the Supplemental Facts Panels located on the back of the packages, does not comply

with the industry standard labeling requirements for nutritional supplements. 21 CFR 101.105. Instead, the contract limiting language created by defendant's "per serving" verbiage in small print on the back of each package was procedurally unconscionable, and violated public policy. See, *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 553-558 (2014).

Because of that, the "retraction language" relied upon by defendant is not a part of the contract formed between the parties, and provides it no respite.[8]

### C. Claim 2, for Breach of Warranty, was Improperly Dismissed Because there is no Exception for "Consumables."

The federal MMWA creates a civil cause of action for consumers to enforce the terms of implied or express warranties. *See* 15 U.S.C. § 2310(d). In order to bring a cognizable claim under the MMWA, the amount in controversy of an

---

[8] Allusions to cases with peel back or shrink wrap labels (e.g., for software products is in apposite). In such cases, those contract terms are set forth on a license for intellectual property, and they are not there as an attempt to "fix" misleading or false information on the front. Rather, they are there to protect the seller's intellectual property rights and to define the legal relationship of the parties. If the facts present in Walters were adjudicated in those contexts, the result would be different. That's because the comparable facts would be that a software package has a PDP that says, for example, "Install this Product on FIVE different systems". But then, the fine print inside says that a "system" is defined as one half of any computing device", so the result is that installing the software on any device takes up two systems. So, the customer who is purchasing software for "FIVE" systems can actually only use it on two devices (e.g., one computer and one smartphone). That is precisely what Vitamin Shoppe is doing here, and this is precisely what would not be allowed for shrink wrap labeling licenses because the result is not just a "take-back" but it is to mislead the customer as to what he or she is purchasing.

individual claim must be greater or equal to $25, and the number of named plaintiffs must be more than one hundred. 15 U.S.C. § 2310(d)(3)(C). In addition, the MMWA applies only to products that cost more than five dollars. 15 U.S.C. § 2302(e). Under the MMWA, a "written warranty" means a "written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material . . . and affirms or promises that such material . . . is *defect free* or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). The word 'defect' is not defined within the MMWA. The Oxford English Dictionary defines "defect" as "the fact of being wanting or falling short; a blemish [or] flaw."

Here, Appellant pleaded breach of warranty, which in the context of the briefing on the MTD, confirmed that the warranty at issue was limited to MMWA. Unlike other cases concerning supplements, which claim breach of warranty for generalized terms like "all natural", this instant case concerns written terms found on the PDP that are specific, quantifiable, and not earnestly disputable. Here, the SAC claims that the PDP was a written warranty that the supplement was defect free in that it, e.g., for LAO, contained three hundred 2,000 milligram tablets. In fact, the product contained a defect because it contained half or less of the warranted product.

The substantive merits of the MMWA claim were not seriously contested, rather, the issue decided by the Magistrate Judge was whether a state warranty law exemption for "consumables" created an exemption in the federal MMWA law for "consumables". The Magistrate Judge found that it did. But, the Magistrate Judge was wrong. No Ninth Circuit case has ever found that to be the case. And, when addressing a comparable State-law-exemption-import-into-federal-MMWA-law, the Ninth Circuit reached the opposite conclusion.

Many Ninth Circuit cases that address MMWA claims also address the Song-Beverly Consumer Warranty Act ("SBCWA") under California law, which also excludes claims concerning "consumables." The SBCWA provides that "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. Under the SBCWA, a "consumer good" is defined as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." Cal. Civ. Code § 1791(a); *see Brazil*, 935 F.Supp.2d at 965.

Regardless of California's state warranty statutes, no such exclusion for "consumables" has been found to exist for claims under the MMWA. *See*, *e.g.*, *Brazil v. Dole Food Co., 935 F.Supp.2d 947, 965 (N.D.Cal. 2013)*; and, *In re ConAgra Foods, Inc.,* 908 F. Supp. 2d 1090 (C.D. Cal. 2012)

(plaintiffs bringing claim concerning consumable cooking oil, under the MMWA, were given leave to amend to meet FRCP 9(b) pleading requirements when claims sounded in fraud).

Consequently, unless this Court were to establish a new rule of law allowing state law exceptions for warranty laws to alter the federal MMWA law, and create exceptions thereto, the dismissal as to this Claim must be overturned.[9]

### D. Claim 3, for Unjust Enrichment, was Improperly Dismissed Because it's Not a Given that a Contract was Formed, and, in any event, Pleading in the Alternative is Allowed.

#### 1. Pleading in the Alternative is a Right.

Federal Rule of Civil Procedure 8(d)(2) states that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Rule 8(d)(3) provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Rule 8(a) does not require a plaintiff explicitly to designate alternative claims "as long as it can be reasonably inferred that this is what [the plaintiff was] doing." *Coleman v. Standard Life Ins. Co.*, 288 F. Supp. 2d 1116, 1120 (E.D. Cal. 2003).

---

[9] Note, the principal purpose of a federal substantive law covering a subject— uniformity—would be destroyed if Respondent's position that state law exceptions create exceptions to federal law were affirmed. This is because there would then be a patchwork quilt of 50 different exceptions. Moreover, conceivably, states could completely restrict its consumer's access to federal productions by creating exceptions that swallow the rule. States are not allowed to unilaterally legislate out of federal law.

Courts have recognized that it is improper to make a plaintiff choose at the pleading stage which of two theories to proceed under even though pleading both creates "technical obstacles":

> At this early stage of the litigation, and given the "general purpose of the [Federal Rules of Civil Procedure] to minimize technical obstacles to a determination of the controversy on its merits," [citation], it would be imprudent to force Motorola to choose between the alternative theories currently expressed in the SAC. Accordingly, defendants' MTD the unjust enrichment claim is DENIED. *Motorola, Inc. v. AU Optronics Corp.)*, 785 F. Supp. 2d 835, 847 (N.D. Cal. 2011).

To the extent that a District Court has forced a plaintiff to choose at the pleading stage, that opinion has been rightly criticized:

> The Court is aware of at least one district court holding to the contrary. *See Newgent v. Wells Fargo Bank, N.A.*, 09CV1525 WQH, 2010 U.S. Dist. LEXIS 18476, 2010 WL 761236, at *7 (S.D. Cal. Mar. 2, 2010) (granting a MTD a promissory estoppel claim under the rationale that "[b]ecause Plaintiff was already legally obligated to make payments on her mortgage . . . the payment in reliance on the promise that Wells Fargo would delay the trustee's sale was not detrimental."). While it is true that under California substantive law breach of contract and promissory estoppel ultimately depend on mutually exclusive findings of fact (i.e. consideration and lack of consideration), [citations], *Newgent* errs by applying this issue of proof at the pleading stage. Even though inconsistent findings of fact may not survive the proof stage, inconsistent claims are explicitly permitted at the pleading stage under Federal Rule of Civil Procedure 8(d)(3). *Treefrog Devs., Inc. v. Seidio, Inc.*, 2013 U.S. Dist. LEXIS 110760, *23, n.5, (S.D. Cal. Aug. 6, 2013).

Here, Appellant made clear in his briefing to the Court below that he was pleading in the alternative, thus dismissal was improper.

2. <u>Summary Judgment was Improper Because No Notice Was Given.</u>

However, the Magistrate Judge also recommended dismissal based on his finding, by way of summary judgment, that a contract existed, and therefore, the unjust enrichment claim failed. At page 12 of his FR, the Magistrate Judge states: "However, as I have found that a valid and enforceable contract arose from the transaction at issue, Walter's unjust enrichment claim cannot survive." Then, on page 15, the Magistrate Judge further states:

Additionally, the court conducted supplemental oral argument on May 6, 2015, to address the relationship between Walter's UTPA, breach of contract, and fraud claims. Specifically, the court heard additional argument on whether a UTPA claim can lie against the terms of a valid contract. In light of my findings above that the contract at issue is not "procedurally unconscionable," as alleged by Walters in his Response brief, that the contract does not violate public policy and that Walters can make no showing of justifiable reliance necessary to establish fraud, I find there is no basis for Walters' UTPA claims even if an "ascertainable loss" can be alleged. Fed. R. Civ. P. 56(f)(2) ("After giving notice and a reasonable time to respond, the court may . . . (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute"). For these reasons, I find that granting Walters leave to amend the infirmities of his UTPA would be futile and that claim should be dismissed with prejudice.

The problem is that while the Magistrate Judge did allow "supplemental briefing" on a legal issue, there was zero notice that he intended to convert the 12(b)(6) motion to a summary judgment motion. This is entirely improper in this Circuit. *Grove v. Mead School Dist.*, 753 F.2d 1528, 1532-1533, (9th Cir. Wash.

1985).  Before summary judgment may be entered, all parties must be given notice of the motion and an opportunity to respond. *Portland Retail Druggists*, 662 F.2d at 645. The opportunity to respond must include time for discovery necessary to develop facts justifying opposition to the motion. *Id.*; Fed.R.Civ.P. 56.

In this circuit, notice is adequate if the party against whom judgment is entered is "fairly apprised" that the court will look beyond the pleadings, thereby transforming the MTD into a motion for summary judgment. *Mayer v. Wedgewood Neighborhood Coalition*, 707 F.2d 1020, 1021 (9th Cir.1983) (per curiam). Notice occurs when a party has reason to know that the court will consider matters outside the pleadings. *See Townsend v. Columbia Operations*, 667 F.2d 844, 849 (9th Cir. 1982).

Here, to the extent there was supplemental briefing, it was confined to briefing on legal issues, e.g. FDA regulations, that was requested by the Magistrate Judge, and Respondent submitted no additional "facts", nor "matters" outside the pleadings that were not purely of a legal nature.  ER23.  Consequently, this decision was improper.

3. <u>In Any Event, any "Finding", that a Contract Existed Was Premature, Absent Factual Findings.</u>

The Magistrate Judge further confused the issue when he found that both parties "agreed" that there was a contract, even if they did not agree as to what its terms were. ER13-16.  And, then he concluded that this lack of dispute as to the

fact of a contract, regardless of the dispute over its terms, was sufficient for a finding that there was a contract, of some sort, and therefore, that contract barred the unjust enrichment claim. *Id.* The principal problem is that this is manifestly NOT the law. Where there is no single writing signed by both parties that embodies the contract, and both parties dispute the terms of a contract, it is a disputed issue of fact as to what the contractual terms are, and unless that dispute is resolved in a manner that the essential terms are sufficient to form a contract, then no contract was in fact formed. In other words, a dispute over the terms of the contract can result in the absence of contractual intent, which will in turn prevent contract formation. *Cook v. The MV Wasaborg*, 189 F.Supp. 464, 468-469 (D. Or. 1960).

While Appellant does believe there was a contract, Appellant is also mindful that the contract terms that he believes exist and are enforceable are different in critical respects from those that Respondent believes are enforceable. And, so cognizant that the trier of fact might not find a contract to exist, has pleaded unjust enrichment in the alternative. The Magistrate Judge was wrong to find the contrary.

To create a contract, the minds of the parties must meet as to every essential term of the proposed contract and there must be a clear and unequivocal acceptance of a certain and definite offer in order that such offer may become a

contract. *Joseph v. Donover Co.*, 261 F.2d 812, 823, n.11 (9th Cir. 1958); *Deering-Milliken & Co. v. Modern-Aire of Hollywood, Inc.*, 231 F.2d 623, 625-26 (9th. Cir. 1955).

Oregon follows the same rule. *Klussman v. Day*, 107 Or. 109, 120-21 (1923), *rehearing denied* 214 P. 348. An offer, to become a contract, must be accepted. *Maeder Steel Products Co. v. Zanello*, 109 Ore. 562, 567 (1923); *Medford Furniture & Hardware Co. v. Hanley,* 120 Or. 229, 233 (1926). A meeting of the minds on each and all of the essential elements is indispensable to the creation of a contractual relationship. *Kretz v. Howard*, 220 Or. 73, 346 P.2d 93.

One example is this Court's analysis in *Deering-Milliken & Co., supra* at 626-7. There, the dispute centered on a term in the contract "in the greige", which the evidence explained had more than one plausible "technical meaning" which the parties disputed. And, because the term otherwise was "inexplicable and unintelligible as it read", this Court could not find a "meeting of the minds", and could not find the existence of a contract. However, this Court did note that at the trial in the District Court, "There was considerable evidence in the record from which there is a possibility a contract, partially in writing and partially oral, might be spelled out. But this would require findings of fact as to intention, consideration, and definiteness. It is not within the competence of this Court to

make such findings even if it were possible upon the record here, a point upon which no opinion is expressed." *Id.*

As summarized over a hundred years ago:

The due execution of a contract requires the assent of at least two minds to each and all of the essentials of the agreement; and it is only upon evidence of such assent that the law enforces the terms of a contract or gives a remedy for a breach of it.

It is apparent from the findings that the minds of the parties in this instance never met upon the essentials of price and terms of payment, and therefore the trial court's conclusion of law that the contract in controversy was void and incapable of enforcement because of its uncertainty in the particulars stated was the only conclusion that could logically or legally be drawn from the findings of fact. *Jules Levy & Bro. v. A. Mautz & Co.*, 16 Cal. App. 666, 669-670 (Cal. App. 1911), cited with approval in *Deering-Milliken & Co., supra* at 625 n 1.

Here, given the disparate positions of the parties on the critical terms of the contract, the fact that they both "contended" there was "a contract", does not mean that an enforceable contract did or did not exist. Because this is not a simple executed paper contract, it was improper for the Magistrate Judge to find otherwise on the record before him, and within the procedural posture he was tasked to evaluate the issue.

     **E.**    **Claim 4, for Fraud Because the Allegations, Taken in the Light Most Favorable to Walters Establish that Respondent's Conduct was Fraudulent.**

The elements of fraud are:

(1) the Defendant falsely represented a material fact;

(2) the Defendant knew that the representation was false;

(3) the misrepresentation was made with the intent to induce the Plaintiff to act or refrain from acting;

(4) the Plaintiff justifiably relied on the misrepresentation; and

(5) the Plaintiff was damaged by that reliance. *Pollock v. D.R. Horton, Inc.-Portland,* 190 Ore. App. 1, 20 (2003).

Here, as set forth at ¶¶ 68-74 of the SAC, Appellant pleaded the PDP representations relating to the number of milligrams or units of ingredient within the package and the total number of milligrams or units of the ingredient (quantity per unit multiplied by the number of units ("Representations")) were knowingly false. That the Representations were material and made with the intent that Appellant would rely upon them in purchasing the product. That Appellant did justifiably so rely and was damaged thereby because he received substantially less product than was represented on the PDP.

The Magistrate Judge, however, found that Appellant's claims failed for two reasons. First, a fraud claim fails where the alleged fraud is based upon a "failure to read the terms of a contract," and second, because justifiable reliance cannot be established where plaintiff fails to "take some measure to safeguard her own interests," such as failing to take advantage of the "contractual terms" or available

on the back panel, citing *Kreidler, Placencia*, and *Gregory*.  However, the Magistrate Judge was wrong on both the law and the facts.

Preliminarily, to the extent that the Magistrate relied upon contractual terms that are in dispute, the entire justification fails for the reasons set forth earlier.

First, the law is actually to the contrary on reliance when it comes to fraud and the claimed "obligation" of the plaintiff to take action to safeguard her interests:

> Under these circumstances, the trier of the facts resolves the conflicting claims of the party who has been fraudulent and the party who has been careless in believing the fraudulent representation.  [citations]  This court has elected to protect the rights of the latter rather than permit the fraudulent party to achieve his purposes by asserting that the representee was guilty of negligence in believing the fraud.  [citations]  In *Heverly v. Kirkendall*, 257 Or 232, 237, 478 P2d 381, 383 (1970), this court held that a fraud-feasor will not be heard to assert that his victim was negligent in relying on the misrepresentation. The rationale for this rule was explained by this court in [citation]:
>
> > "* * * '* * * The law is not designed to protect the vigilant, or tolerably vigilant, alone, although it rather favors them, but is intended as a protection to even the foolishly credulous, as against the machinations of the designedly wicked. It has also been frequently declared that as between the original parties, one who has intentionally deceived the other to his prejudice is not to be heard to say, in defense of the charge of fraud, that the innocent party ought not to have trusted him or was guilty of negligence in so doing.' [Citations omitted.]
>
> We see no reason to depart from these well-established rules. There was substantial evidence to support the trial court's finding that defendant relied on plaintiff's misrepresentation and that the reliance

was justifiable.  *Kubeck v. Consolidated Underwriters*, 267 Ore. 548, 554-556 (Or. 1974) (finding the facts showed justifiable reliance).

Whether reliance is reasonable is quintessentially a question of fact, based upon a totality of the circumstances.  *West Rail Constr. Co., LLC v. Inland Pac. Energy Ctr., LLC*, 2009 U.S. Dist. LEXIS 44954, *8-12, (D. Or. May 26, 2009). But, regardless, the law will always favor the foolish plaintiff over the deceitful defendant:

> [The Law has long recognized that it is] better to encourage negligence in the foolish than fraud in the deceitful principle in discussing fraudulent conduct in regard to other types of claims. [citations]...Still, when understood in the larger context of the case law concerning fraud, neither Johnson nor any other Oregon decision has repudiated the requirement of "reasonable reliance" in fraud cases. Rather, those cases merely highlight that whether reliance is justifiable is to be evaluated in the totality of the circumstances.  *Or. Pub. Emples. Ret. Bd. v. Simat, Helliesen & Eichner*, 191 Ore. App. 408, 426-427, (Or. Ct. App. 2004)

Moreover, even if the back panel is viewed as less than a contract term, perhaps more on the level of a disclaimer, again, the law is that such a disclaimer is but one factor in the determination of whether Plaintiff's reliance was reasonable— and, when all of the facts are looked at in the light most favorable to the Plaintiff, it can be inferred that the reliance was reasonable.  *Rec Boats, LLC v. RP/PHL Marine Leasing, Inc.*, 2012 U.S. Dist. LEXIS 182061, *17-23 (D. Or. Dec. 26, 2012).

In fact, the "effect of [a] disclaimer with reference to justifiable reliance is a jury question." *Knepper*, 182 Or. App. at 605, 50 P.3d at 1215.

Here the Magistrate Judge inappropriately dismissed Appellant's claim on account of foolishness and improperly resolved a question of fact that required a jury determination.

*Kreidler v. Taylor,* 473 F. Supp. 2d 1090, 1103-1104 (D. Or. 2007), cited by the Magistrate Judge, does not compel a different result. That is because for purposes of summary judgment, the Court in *Kreidler* merely found that plaintiff did not muster sufficient clear and convincing evidence that her reliance on the defendant's mischaracterization of the quitclaim deed was justifiable where the evidence showed that the plaintiff was an active real estate agent with years of experience and prior transactions involving quitclaim deeds. Again, the instant case concerned a MTD, and there is nothing about the "characterization" of the product at issue here. Rather, it specifically concerns representations on quantity and amount.

The Magistrate Judge's reliance on *Placencia v. World Sav. Bank, FSB*, 2011 U.S. Dist. LEXIS 64831, (D.Or., 2011) is particularly misplaced. There, the court noted:

> the heart of this claim is that the defendant allegedly misled the plaintiff about the fact that the Trust Deed created a trust in which the plaintiff pledged the property to secure the performance of her obligations under the Note. But the alleged "misrepresentation" is

belied by the very documents the plaintiff signed. As described above, the Trust Deed explicitly informed her that the property would be put in a trust. *Id.* at 20.

Unlike the case now at issue, nothing in the *Placencia* documents was claimed to be inaccurate or misleading. Instead, the plaintiff was, essentially, simply unclear on the meaning and effect of the accurate and truthful documents at issue. *Id.*, at *19-22.

And, the Magistrate Judge's reliance upon *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir., 2012) is similarly unhelpful. In *Davis*, the plaintiff brought a claim that the annual credit card fee at issue was not adequately disclosed because he did not see it when he signed up for the card. Essentially, the plaintiff simply failed to read the term in the documents when he applied for the card. *Id.*, at 1161-64. *Davis* would apply to the instant case *hypothetically,* if, for example, the defendant there would have had represented on its advertisements or main disclosure statements "annual fee $59," yet in fine print indicated that the "annual fee" of $59 was charged twice a year and the *Davis* court still reached the same outcome. Those facts, however, were not present in *Davis*.

As with *Placencia, Davis* contained no initial misleading statement intended to be the primary information seen by the consumer that was later modified or retracted by fine print. As such, neither case is relevant to the matters before this court.

Here, whether it was reasonable for Appellant to rely on Respondent's representations in the PDP is a jury question not appropriate for dismissal at the 12(b)(6) stage.

Finally, as discussed more fully below, as a purely factual matter, the notion that Appellant could not have been misled by the PDP that failed to contain the qualifying language is particularly interesting given that the industry standard, set forth at 21 CFR 101.105, is that accurate information regarding quantities of supplement appear *on the front-facing PDP*.  Apparently, the Magistrate Judge believed that plaintiff should have—as a matter of law—distrusted the clear and unequivocal standardized information printed on the PDP (apparently but not actually in compliance with the FDA rules at 21 CFR 101.105 because of its falsity) and searched the back of the packaging to see if he was being misled or defrauded. But, Appellant had the right to rely—and did rely—on the standardized factual information on the PDP.

### F. Claim 5, for Violations of the UTPA, was Improperly Dismissed Because the Allegations, Taken in the Light Most Favorable to Walters Establish that Respondent's Violated the Statute, and Plead Ascertainable Damages

The UTPA claim was dismissed principally on the basis that where there was a valid unbreached contract, no fraud claim could lie.  ER23.  Thus, to the extent that this Court overturns the dismissal of the breach of contract claim, the dismissal of this claim naturally follows.  The Magistrate also dismissed the UTPA

claim on the grounds of "no ascertainable loss", despite the fact that ascertainable

loss was pleaded.  As shown below, independent regardless of the outcome of the

breach of contract claim, both the basis for dismissing the UTPA.

1.     The PDP Violates the FDA Regulations' Legal Obligation on Respondent to Disclose Certain Facts on the PDP.

Moreover, regardless of whether there is a contract or not, failing to comply

with a federal obligation to inform the plaintiff of certain facts can be a basis for

violating the UTPA.  As the Oregon Supreme Court established over 30 years ago

when construing a different subsection of the UTPA, breaches of a legal duty to

disclose establish liability under the UTPA regardless of any "other sources" of

information available to a plaintiff, because the breach of such duty eliminates the

reliance requirement:

> Plaintiff argues that the statement of its agent that defendants had no right to rescind was not a misrepresentation but was a mere statement of opinion regarding a legal relationship about which both parties had equal knowledge ([citation]); and that, in any event, because defendants had actual written notice of their right to rescind, they could not justifiably rely upon any contrary representation made by plaintiff or its agent. [citation].
>
> We do not agree that a misrepresentation by the creditor as to the obligor's right to rescind is a mere difference of opinion, or that reliance by the obligor is necessary for the misrepresentation to be actionable. The Supreme Court stated in *Francis* that whether reliance is an element of an action under the UTPA "necessarily depends on the particular unlawful practice alleged." [citation]. In this case, the unlawful practice alleged by defendants was a representation by plaintiff that defendants had no right to rescind a contract which both federal law ([citation]) and state law ([citation]) required plaintiff to

inform defendants they did have a right to rescind. The representation was therefore not a mere statement of opinion; **it was an affirmative misstatement by one party of a fact which that party was required to accurately state to the other.** Similarly, proof that a party justifiably relied on a representation is not necessary when the representation involves a matter about which the party making it is legally required to inform the other.

*Tri-West Constr. Co. v. Hernandez*, 43 Ore. App. 961, 971-972 (Or. Ct. App. (1979), petition for review denied, 1980 Ore. LEXIS 871 (Or. 1980)

In *Tri-West* the UTPA subsection at issue (1)(k) prohibits making false or misleading representations concerning credit availability or the nature of the transaction or obligation incurred. Here, the claims fall under subsections (1)(e) and (1)(s) which prohibit making false or misleading representations that goods have characteristics, ingredients, quantities or qualities that they do not have and false or misleading representations of fact concerning the offering price of, or the persons cost for goods.

In *Tri-West*, a federal law required that the right to rescind be disclosed by creditor to the debtor, which was not done, and the UTPA prohibited false or misleading representations in the context of extending credit. The violation of the federally-imposed duty created a basis for violation of the UTPA. That is just like the circumstances here where Respondent was under a legal duty to disclose certain facts on the PDP under FDA regulations, and failed to do so. In *Tri-West,* the defendant argued that the disclosure occurred in a different manner so the fraud

claim failed. The Court rejected that position because (a) the principal violation was the failure to disclose by a party with a legal obligation to do so, which was not changed at all about other facts that may or may not have been available to the plaintiff and (b) where such a failure occurs, reliance is not required. Here too, Respondent argued, and the Magistrate Judge found, that the information was disclosed elsewhere than the PDP, so no fraud claim can survive. This Court should reject that position on the exact same grounds.[10]

Moreover, nothing in the UTPA limits its application to circumstances where there is no contractual disclosure. Rather the deceptive act is **<u>not</u>** limited to a paper representation, but is as broad as possible such that actionable misrepresentations "may be **any manifestation** of **any assertion by words or conduct**, including, but not limited to, a failure to disclose a fact." ORS § 646.608. Here, the combination of factors such as having the PDP on the front of the bottle or package of the accused products without the per serving count, located next to competitor's products, and when nonaccused products do show a per

_____

[10] Note, that under certain circumstances reliance (under the rubric of causation) can be required for a UTPA claim, depending upon the circumstances. Here, unlike cases where reliance was required, it is undisputed that the consumer wanted to purchase the product, but the consumer got just half or less of the quantity of the product that was represented on the PDP. Getting less than what one paid for (rather than something "different" than what one paid for), eliminates the reliance requirement. Otherwise, every time a defendant advertised a product for a dollar amount and then overcharged the consumer, the consumer would have to prove that he or she would not have paid more for that product.

serving count on the PDP, are the totality of circumstances that for purposes of a 12(b)(6), are manifestly actionable under the UTPA.

21 C.F.R. 101 governs "Food Labeling" generally. Section 101.1 (all section numbers refer to 21 C.F.R. 101 unless stated otherwise) defines the term "PDP" as:

> [T]he part of a label that is **most likely to be displayed, presented, shown, or examined under customary conditions of display for retail sale**. The PDP shall be large enough to accommodate all the mandatory label information required to be placed thereon by this part with clarity and conspicuousness and without obscuring design, vignettes, or crowding. **Where packages bear alternate PDPs, information required to be placed on the PDP shall be duplicated on each PDP.** For the purpose of obtaining uniform type size in declaring the quantity of contents for all packages of substantially the same size, the term area of the PDP means the area of the side or surface that bears the PDP, which area shall be: ... In the case of a **cylindrical or nearly cylindrical container**, 40 percent of the product of the height of the container times the circumference.... (Emphasis added.)

Section 101.3, pertaining to "identity labeling of food in packaged form," provides that: "The PDP of a food in package form shall bear as one of its principal features a statement of the identity of the commodity."

Section 101.105 states "[t]he PDP of a food in package form shall bear a declaration of the net quantity of contents."

Importantly, subsection (c) provides that: "When the declaration of quantity of contents by numerical count does not give adequate information as to the quantity of food in the package, it shall be combined with such statement of weight, **measure**, or size of the individual units of the foods as will provide such

information. 21 C.F.R. 101.105(c)." (Emphasis added.)

And: "The declaration shall be located on the PDP of the label, and with respect to packages bearing alternate principal panels it shall be duplicated on each PDP." *Id.* at 101.105(e).

Finally, specific to dietary supplements, section 101.36, titled "Nutrition labeling of dietary supplements," provides that: "[t]he label of a dietary supplement that is offered for sale shall bear nutrition labeling in accordance with this regulation unless an exemption is provided for the product in paragraph (h) of this section." None of the exemptions set forth in paragraph (h) apply to Respondent here (i.e., Respondent makes in excess of $500,000 annually [section 101.36(h)(1)]; Defendant employs in excess of 100 persons [*id.* at (h)(2)]; supplements at issue did not ship in bulk and were intended for direct sale to consumers [*id.* at (h)(3)]).

In summary, the front facing portion of the package contains the PDP. Section 101.105 requires that the PDP shall contain a declaration as to the "net quantity of contents" and, when such a declaration is a numerical amount (and "does not give adequate information as to the quantity of the food in the package"), it must "give adequate information as to the quantity of food in the package" and "it shall be combined with such statement of weight, **measure**, or size of the individual units of foods." (Emphasis added.)

Here, the PDP on the front of the packages is misleading — it does not provide "adequate information" as to the amount of product (mg) contained in the package. In such a case, *Respondent is required to provide a statement of the "measure" of the "individual units" in order to provide adequate information to the consumer.* Per section 101.105, this information must be provided on the PDP, and must be duplicated on each PDP (if the product has more than one).

The Vitamin Shoppe's argument that the information is *supplemented* or *clarified* by the information contained on the information panel on the back of the containers (per 101.36) does not escape the fact that, at the very least, it was required to include the <u>measure of the quantity of each individual unit on the PDP</u>. Based on a plain reading of the Act, "clarifying" information elsewhere on the packaging does not meet this standard.

In other contexts, supplemental information has been found wholly inadequate. *See*, *e.g.*, *Richards v. Home Depot, Inc.*, 456 F.3d 76, 80-81 (2d Cir. 2006) (in applying Federal Hazardous Substances Act, requirement that warnings be provided on product's "primary panel" are not met when warnings are placed on other information panel located on product).

Moreover, any argument that the information panel is an additional PDP, and therefore Defendant *has* provided the necessary information on a PDP, is defeated by the fact section 101.105(c) states that such declarations "shall be

duplicated on *each* PDP."

2. The Magistrate Judge Without Citation to Any Legal Authority Found that Respondent Caused Appellant Harm But Not Ascertainable Loss.

The Magistrate Judge correctly found that Walters had properly alleged that Respondent caused him harm because he received half as much product as he paid for. But then, inexplicably, and without citation, concluded that because Walters had not alleged economic harm and money damages, the "ascertainable loss" requirement of the UTPA was missing. Again, there is no legal citation for this proposition. There was no controlling case authority that could be located that imposes this requirement. And, the law is actually the opposite. "Ascertainable loss" is a very BROAD term, and the slightest cognizable loss, however amorphous, can satisfy it, as long as it is "capable of being discovered, observed, or established":

> "Ascertainable loss" under the UTPA is amorphous. Any loss will satisfy that requirement so long as it is "capable of being discovered, observed, or established." [citation]. Whatever the extreme contours of that concept, the loss here fell well within its limits. At the very least, to obtain the promised feature of exclusivity, plaintiff would have to purchase the drawings that defendant withheld. As noted, defendant listed one of those drawings for a price of $ 1,600. Thus, if plaintiff did, in fact, rely on defendant's misrepresentations of exclusivity, plaintiff incurred "ascertainable loss" within the meaning of ORS 646.638(1). *Feitler v. The Animation Celection, Inc.*, 170 Ore. App. 702, 712-713 (Or. Ct. App. 2000)

Taking the SAC at what it is, receiving half or less of the product paid for per the PDP is far more "discoverable" "observable" or "established" than, say, the plaintiff in *Feitler*, who had to prove the loss from lack of "exclusivity". Case after case is in accord with this proposition:

> There was evidence of an "ascertainable loss." The tent was purchased for $ 38.86. The inference is that the tent, as represented, had that value. The tent sold did not have some of those represented features. The inference can be drawn that because the tent did not have a window with a closing flap or eaves it had a value of less than $ 38.86. To repeat, the plaintiff did not have to prove in what amount the value of the tent was reduced because it was not as represented. He merely had to prove he suffered some loss. *Scott v. Western International Surplus Sales, Inc.*, 267 Ore. 512, 515-516 (Or. 1973).

And, it has been analyzed extensively, and each time, a broad definition is embraced:

> What the legislature meant by an "ascertainable loss of money or property" is not free from doubt. The case was tried on the theory that a plaintiff must show an economic loss in the sense of a difference between the price paid and some objective measure of market value. This is one plausible reading of the statute, but it is not the only one. Another possible reading is that the legislature meant to exclude a civil action by a customer who was attracted by a forbidden misrepresentation but in fact did not act upon it, or who received immediate satisfaction at no expense when bringing the matter to the seller's attention, yet that a "loss of money or property" includes the expenditure of funds for goods that are not as desired by the customer and represented by the seller irrespective of their market value to others...

> The overall structure of the UTPA lends some support to the second view of the legislative policy. The civil action authorized by ORS 646.638 is designed to encourage private enforcement of the prescribed standards of trade and commerce in aid of the act's public

policies as much as to provide relief to the injured party….The evident purpose is to encourage private actions when the financial injury is too small to justify the expense of an ordinary lawsuit, provided that the action is timely initiated while the unlawful practice may be continuing and that the state is given an opportunity to investigate the practice for possible wider enforcement action.

**All of this suggests that in enacting ORS 646.638, the legislature was concerned as much with devising sanctions for the prescribed standards of trade and commerce as with remedying private losses, and that such losses therefore should be viewed broadly. The private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute.** *Weigel v. Ron Tonkin Chevrolet Co.*, 298 Ore. 127, 133-137 (Or. 1984) (emphasis added).

Thus, monetary damages are not required. And, the SAC in alleging half of the product or more purchased was not actually received, "ascertainable loss", is firmly established.

### G. In the Alternative, the Complaint Could Have Been Amended to Cure Any Deficiencies.

Although this was Appellant's SAC, it was dismissed with prejudice after Respondent's first. Such a drastic remedy is not warranted where amendments were certainly possible regarding damages (UTPA) and deception (fraud).

## VII. <u>Conclusion</u>

Because the Magistrate Judge's FR was suffused with error and unwarranted legal and factual findings, and the District Court approved the FR in dismissing Appellant's five Claims, and entering Judgment for Respondent, this Court should

vacate the judgment, overturn the Order of Dismissal, and remand the case back to allow Appellant to proceed on the merits of his claims.

DATED: November 25, 2015     **FOLEY BEZEK BEHLE & CURTIS LLP**
**BRADY MERTZ PC**


By:   \_\_ s/ Justin P. Karczag_____
       Robert A. Curtis
       Justin P. Karczag
       Brady Mertz
       Attorneys for Appellant
       and the Putative Class

# CERTIFICATE OF COMPLIANCE

In accordance with Rule 32(a)(7) of the Federal Rules of Appellate Procedure, the undersigned certifies that the accompanying brief has been prepared using 14-point Times New Roman typeface and uses double spacing (except for headings, footnotes, and certain quotations).

The undersigned further certifies that the brief is proportionately spaced and contains 13,937 words, exclusive of the table of contents, table of authorities, signature lines, and certificates of compliance and proof of service. The undersigned used Microsoft Word for Mac 2011 to compute the word count.


DATED: November 25, 2015    **FOLEY BEZEK BEHLE & CURTIS LLP**
                                     **BRADY MERTZ PC**

                                     By: __s/ Justin P. Karczag_____
                                          Robert A. Curtis
                                          Justin P. Karczag
                                          Brady Mertz
                                          Attorneys for Appellant
                                          and the Putative Class

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellant certifies that there are no known related cases pending in this Court.


DATED: November 25, 2015     **FOLEY BEZEK BEHLE & CURTIS LLP**
                             **BRADY MERTZ PC**


                             By: __s/ Justin P. Karczag_____
                                   Robert A. Curtis
                                   Justin P. Karczag
                                   Brady Mertz
                                   Attorneys for Appellant
                                   and the Putative Class