No. 15-35592

_____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

LEE WALTERS, M.D., an Oregon resident,

Plaintiff-Appellant,

v.

VITAMIN SHOPPE INDUSTRIES, INC., a Delaware corporation,

Defendants-Appellee.

_____

Appeal from the United States District Court for the
District of Oregon (Portland Division)

Civil Case No. 3:14-cv-01173-PK (Judge Anna J. Brown)

_____

## APPELLANT'S REPLY BRIEF

_____

Robert A. Curtis, SBN 203870
Justin P. Karczag, SBN 223764
**FOLEY BEZEK BEHLE &
CURTIS, LLP**
15 W. Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 962-9495
Facsimile:  (805) 962-0722
Email: rcurtis@foleybezek.com;
     jkarczag@foleybezek.com

Brady Mertz, SBN 970814
**BRADY MERTZ PC**
345 Lincoln Street SE
Salem, OR 97302
Telephone: (503) 385-0121
Facsimile:  (503) 375-2218
Email: brady@bradymertz.com

Rick Klingbeil, SBN 933326
**RICK KLINGBEIL PC**
2222 NE Oregon Street, Suite 213
Portland, OR  97232
Telephone: (503) 473-8565
Fascimile: (503) 442-9001
Email: rick@klingbeil-law.com

*Counsel for Plaintiff-Appellant Lee Walters, M.D.*

# **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................ 1

II. ARGUMENT ............................................................................ 6

   A.  Affirming the District Court's Decision Will Run Contrary
      to Established Ninth Circuit Precedent. ........................................ 6

   B.  Claim 1, for Breach of Contract, was Improperly Dismissed ........................ 8

   C.  Claims 2 and 3 for Fraud and Violation of the UTPA Were
      Improperly Dismissed Because They Were Tethered to the
      Breach of Contract Claim Which was Improperly Dismissed .................. 14

   D.  VSI Failed to Comply with FDA Regulations ............................................. 15

   E.  Claim 4, for Unjust Enrichment, was Improperly Dismissed ..................... 21

   F.  Appellant Has Not Waived Any Legal Arguments Raised in
      the Appellate Brief. ........................................................................... 23

   G.  The District Court Should Have Granted Leave to Amend. ........................ 24

III. CONCLUSION ........................................................................ 27

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ackerman v. Coca-Cola Co.*,
  2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. 2010) .................................................. 7

*Arnett v. Bank of Am., N.A.*,
  874 F. Supp. 2d 1021 (D. Or. 2012) ................................................................. 23

*Arruda v. C&H Sugar Co.*,
  2007 U.S. Dist. LEXIS 16519 (E.D. Cal. 2007) ............................................... 25

*Barnett v. County of Contra Costa*,
  2010 U.S. Dist. LEXIS 68864 (N.D. Cal. 2010) ............................................... 25

*Bauchman for Bauchman v. W. High Sch.*,
  132 F.3d 542 (10th Cir. 1997) ........................................................................ 26

*Cook v. The MV Wasaborg*,
  189 F. Supp. 464 (D. Or. 1960) ...................................................................... 22

*DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Stanford*,
  868 F. Supp. 2d 1042 (D. Or. 2011) ................................................................ 22

*Deadmon v. Grannis*,
  2008 U.S. Dist. LEXIS 15587 (S.D. Cal. 2008) ............................................... 26

*Deering-Milliken & Co. v. Modern-Aire of Hollywood, Inc.*,
  231 F.2d 623  (9th Cir. 1955) .......................................................................... 22

*Desoto v. Yellow Freight Sys., Inc.*,
  957 F.2d 655 (9th Cir. 1992) ........................................................................... 25

*Dupree v. Warden*,
  715 F.3d 1295 (11th Cir. 2013) ....................................................................... 24

*Grove v. Mead School Dist.*,
  753 F.2d 1528 (9th Cir. 1985) ........................................................................... 3

*Indoor Billboard Northwest, Inc. v. M2 Sys. Corp.*,
  922 F. Supp. 2d 1154 (D. Or. 2013) ................................................................ 12

*Joseph v. Donover Co.*,
    261 F.2d 812 (9th Cir. 1958) ............................................................ 22

*Jou v. Kimberly-Clark Corp.*,
    2013 U.S. Dist. LEXIS 173216 (N.D. Cal. 2013) ............................. 7

*Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*,
    464 F.3d 1339 (Fed. Cir. 2006).......................................................... 26

*Lisenbee v. Henry*,
    166 F.3d 997 (9th Cir. 1999) ............................................................ 24

*Miller v. Rykoff-Sexton, Inc.*,
    845 F.2d 209 (9th Cir. 1988) ............................................................ 25

*Miranda v. Anchondo*,
    684 F.3d 844 (9th Cir. 2012) .............................................................. 4

*Motorola, Inc. v. AU Optronics Corp.*,
    785 F. Supp. 2d 835 (N.D. Cal. 2011) .............................................. 21

*N. Clackamas County Water Comm'n v. Siemens Water Techs. Corp.*,
    2014 U.S. Dist. LEXIS 4411 (D. Or. 2014)....................................... 23

*Pareto v. FDIC*,
    139 F.3d 696 (9th Cir. 1998) .............................................................. 9

*Phelps v. 3PD, Inc.*,
    2008 U.S. Dist. LEXIS 92433 (D. Or. 2008)..................................... 12

*Smith v. Conway*,
    582 Fed. App'x 45, 46 (2d Cir. 2014)............................................... 23

*Treefrog Devs., Inc. v. Seidio, Inc.*,
    2013 U.S. Dist. LEXIS 110760 (S.D. Cal. 2013) ............................. 21

*Whitehead v. Okla. Gas & Elec. Co.*,
    187 F.3d 1184 (10th Cir. 1999) ........................................................ 23

*Wilson v. Am. Trans Air, Inc.*,
    874 F.2d 386 (7th Cir. 2006) ............................................................ 26

## STATE CASES

*In re Estate of Moore*,
210 Ore. 23 (1957) ....................................................................... 14

*Kashmir Corp. v. Patterson*,
289 Ore. 589 (1980) ........................................................... 6, 24, 26

*Kretz v. Howard*,
220 Ore. 73 (1959) ....................................................................... 25

*Mount Hood Cmty. College v. Fed. Ins. Co.*,
199 Ore. App. 146 (2005) ........................................................... 24

*New Amsterdam Casualty Co. v. Hyde*,
148 Ore. 229 (1934) ..................................................................... 14

*Olson v. Chuck*,
199 Ore. 90 (1953) ....................................................................... 14

*Tri-West Constr. Co. v. Hernandez*,
43 Ore. App. 961 (1979) ............................................................... 17

*Union Oil Co. of California v. Lull*,
220 Ore. 412 (1960) ............................................................... passim

*Williams v. RJ Reynolds Tobacco Co.*,
351 Ore. 368 (2011) ..................................................................... 14

*Yogman v. Parrot*, 325 Ore. 358 (1997) ........................................... 14

## STATUTES

21 CFR 101.105 ................................................................... 4, 17, 19

21 CFR 101.105(c) ......................................................................... 20

21 CFR 201.62(a) ........................................................................... 20

Fed. R. Civ. P. 8(d)(3) .......................................................... 6, 23, 24

ORS § 42.230 ......................................................................... 13, 14

ORS § 646.608 ............................................................................... 17

## FDA WARNING LETTERS

FDA Warning Letter to Dante Confections, New England District, Subject: *"CGMP in Manufacturing, Packing, or Holding Human Food/Adulterated/Misbranded"* (October 5, 2011) .......................................... 17

FDA Warning Letter to Med-Diet Laboratories, Inc., Minneapolis District, Subject: *"Food Allergins/Misbranded"* (April 10, 2012) .................................. 17

## I.    INTRODUCTION

Defendant Vitamin Shoppe Industries, Inc.'s ("VSI") Response attempts to have this Court surreptitiously overturn its prior ruling in *Williams v. Gerber Prods. Co*, 552 F.3d 934, 939-40 (9th Cir. 2008).  Specifically, VSI contends that this Court should find that there is no theory of liability (e.g., Unlawful Trade Practices Act ("UTPA"), fraud, and/or breach of contract) against VSI for making material misrepresentations on the Principal Display Panel ("PDP") of its products because any misleading, untrue or incomplete statement on there is shielded by the disclosures made on the back of the product's Supplemental Facts Panel ("SFP"). But, in *Williams*, the Ninth Circuit Court of Appeals rejected this outcome on nearly identical facts:

> We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. **We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.**
>
> *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-940 (9th Cir. 2008).

VSI, in effect, seeks to overturn *Williams*, attempting to create precedent that would give itself and other companies free reign to make egregious misrepresentations on the front of a package, so long as the truth is buried in much smaller print on the back of the package.

But, even if the law on that issue was not already settled, there are additional reasons why the lower court's ruling should still be reversed. VSI has not refuted that a factual finding by the District Court—a finding which forms the very basis for its decision to dismiss the breach of contract, fraud, and UTPA claims—is barred by the Oregon Supreme Court, especially at the 12(b)(6) stage. The District Court erroneously adopted the Magistrate Judge's finding that information contained on the SFP is part of the contract, but, as stated by the Oregon Supreme Court, when terms are stated on the back of a product **"a person is not bound by the terms of the written agreement if he has no knowledge of such terms and if, because of the manner in which they were embodied in the instrument, a reasonable person would not be led to suspect that the terms were part of the contract."** *Union Oil Co. of California v. Lull*, 220 Ore. 412, 419-20 (1960) (emphasis added). The reversible error exists because such an issue "present[s] **a jury question** as to whether the printed conditions constitute[] a part of the contract." *Id.* (emphasis added). Here, however, the Magistrate Judge acted as both judge and jury, and made a factual determination (contrary to those pleaded in

the Second Amended Complaint ("SAC")) that the SFP was part of the contract that Appellant Lee Walters, M.D. ("Appellant" or "Walters") had agreed to.[1]

Cognizant that VSI cannot legitimately rebut the express language of the Oregon Supreme Court, VSI instead attempts to distract the Court with irrelevant and inapplicable authority. For example, rather than addressing head on whether a District Court could properly determine what terms are or are not part of a contract, VSI submits authority that merely stands for the proposition that the court has the authority to *interpret* terms of a contract—terms that the parties agree are part of the contract. Whether a court can interpret terms of a contract has no bearing on whether a court can determine which terms are part of the contract in the first instance.

VSI likewise argues that Appellant waived the right to raise arguments that were not set forth in the objection to the Magistrate Judge's Findings and Recommendation. But, VSI relies upon out-of-circuit authority that (again)

---

[1] VSI, in the Brief of Appellee ("BOA") contends that the Magistrate Judge did not turn the 12(b)(6) motion into a Motion for Summary Judgment. *See* VSIs heading at BOA 12. Accepting VSI's position as true supports that the Magistrate Judge was bound by the allegations in the SAC and could not rely on outside facts. Thus, to the extent the Magistrate Judge relied on facts outside of the SAC, he erred. While the Magistrate Judge had the authority to convert the 12(b)(6) motion to a summary judgment motion, he could *only* do so after providing adequate notice— i.e., "fairly apprise[ing]" Appellant "that the court will look beyond the pleadings." *Grove v. Mead School Dist.*, 753 F.2d 1528, 1532-33 (9th Cir. 1985). At most, the Magistrate Judge gave notice that there will be supplemental briefing on a legal issue, not on factual issues.

directly contradicts Ninth Circuit authority. In the Ninth Circuit, the failure to object to conclusions of law of a Magistrate Judge does not bar a party from challenging those conclusions on appeal. *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012).

And, VSI argues that it complied with all FDA regulations, inferring that such compliance shields it from liability from the common law and statutory claims. But VSI cites to no authority supporting such proposition. Nonetheless, the express language of 21 CFR 101.105(a) and (c) supports that VSI violated the FDA regulations. As explained in more detail in Appellant's Opening Brief ("AOB") and below, the PDP must identify the amount of supplement that is contained within the package. When the amount of supplement is identified using the numerical count (e.g., 60 tablets of Vitamin C), and when the numerical count alone does not give adequate information as to the quantity of food in the package, more information (e.g., measure), must be provided.

Here, by stating, for example, "60 tablets of 1,000mg Vitamin C" there is inadequate information, unless there are 60 tablets which each contain 1,000 milligrams of vitamin C. If it means anything else, then the consumer is left to guess the total amount—or "net quantity"—of supplement actually contained in the package. This is especially true because the measure or size of tablets of Vitamin C contained within one container could vary greatly from those contained

in another container or sold by other supplement companies.  Such tablets are not commonly understood by consumers to only come in one fixed size or measure. Put differently, if all Vitamin C tablets sold in the industry always contain 500 milligrams of Vitamin C, then VSI might be able to argue that it was in compliance with 21 CFR 101.105 because a consumer already knows that "60 tablets" of "Vitamin C" always means that it will take 2 tablets to get 1,000mg. But, because in reality, there is no fixed measure for how much Vitamin C is in a Vitamin C tablet, VSI's position that the PDP's representation of "60 tablets of 1,000mg Vitamin C" can really mean 60 tablets of 500 milligrams of Vitamin C, must fail.[2]

Finally, and consistent with the rest of the BOA—relying on inapplicable and irrelevant cases—VSI contends that Appellant cannot alternatively plead breach of contract and unjust enrichment.  But, Oregon state authority—including the very authority upon which VSI relies—expressly affirms that Oregon has "frequently held that a plaintiff may plead alternatively on an express contract and in quantum meruit [i.e., unjust enrichment]."  *Kashmir Corp. v. Patterson*, 289 Ore. 589, 592 (1980). And, VSI fails to refute (or even address for that matter) that

---

[2] Note, even under this hypothetical scenario, VSI would still be in trouble, because it's arguably very misleading to include the "1000MG" on the label when everyone knows that tablets always contain 500MG of Vitamin C and there are 60 tablets.  In that hypothetical world, what is the purpose of putting "1000MG" on the label at all?  Most likely to trick the consumer into thinking that he or she is getting something different than what is otherwise expected—e.g., that ordinarily there's only 5000MG of Vitamin C in tablets, but these tablets actually contain 1000MG.

the right to plead in the alternative is even more paramount in federal court under FRCP 8(d)(3), which provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." FRCP 8(d)(3).

## II.    ARGUMENT

### A.    Affirming the District Court's Decision Will Run Contrary to Established Ninth Circuit Precedent.

Appellant alleges that the PDP of VSI's products expressly misrepresent the amount of supplement that is being sold.  For example, the PDP states 60 tablets, 1,000mg, which leads one to fairly but falsely believe that each of the 60 tablets is 1,000mg, when the truth is those 60 tablets from VSI are only 500mg each.  The Magistrate Judge, however, found that there is no liability because the SFP discloses the truth.  But, such a finding runs contrary to the Ninth Circuit Court of Appeals' decision in *Williams*, 552 F.3d at 939-40, which is nearly on all fours with the case at hand.  In *Williams*, the front of the packaging said "fruit juice snacks" and the packaging pictured a number of different fruits, potentially suggesting (falsely) that those fruits or juices were contained in the product.  *Id.*  at 939.  The district court had found that plaintiff had not sufficiently pleaded a claim for violation of the applicable consumer protection statute because of the disclosures on the SFP, but the Ninth Circuit reversed, stating:

> The district court suggests that "no reasonable consumer upon review of the package as a whole would conclude that Snacks contains juice from the actual and fruit-like substances displayed on the packaging

particularly where the ingredients are specifically identified [on the side of the package]." [Citation] **We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box**. The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. **We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception**. Instead, **reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging**.

*Id.* at 939-940 (emphasis added).

Thus, "under *Williams*, Defendant cannot rely on disclosures on the back or side panels of the packaging to contend that any misrepresentation on the front of the packaging is excused." *Jou v. Kimberly-Clark Corp.,* 2013 U.S. Dist. LEXIS 173216, *34 (N.D. Cal. 2013); *see also Ackerman v. Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. 2010) ("the presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by vitaminwater's labeling and marketing.")

Just like in *Williams*, this Court should reverse the Magistrate Judge's findings (adopted by the District Court) that disclosures made on the SFP shield

VSI from liability from misrepresentations made on the PDP.[3]  Like in *Williams*, a reasonable consumer (such as Mr. Walters) should not be expected to look beyond the misleading representations (e.g., 60 tablets, 1000mg) to discover the truth— that each tablet was really only 500mg.  The information contained in the SFP should have confirmed the representation made on the PDP, not contradicted it.

## B.    Claim 1, for Breach of Contract, was Improperly Dismissed.

The key issue for the breach of contract claim—the issue that VSI fails to sufficiently refute—is whether the Magistrate Judge, at the pleading stage, when confronted with a factual dispute from the parties as to what the contract was composed of, incorrectly engaged in an analysis of determining what terms are or are not part of the contract. The Magistrate Judge, analogizing to traditional written contracts, concluded that the language on the back of the product was part of the contract, and was enforceable against Appellant, whether he was aware of it or not. This ruling, however, runs contrary to the facts that both sides stipulate to, namely that this was not a traditional written contract signed by both sides.  Instead, this transaction concerned the purchase of a product, and, as pleaded in the SAC, a transaction in which only those terms that were displayed on the PDP were part of the contract (if a contract even existed at all, which was disputed).  In his breach of

---

[3] The SFP lists ingredients and serving size.  BOA 21, citing to SER at 28 (Colton Decl., Ex. 2 (Dietary Supplement Labeling Guide: Chapter IV. Nutritional Labeling)).

contract claim, Appellant pleaded that a contract was entered into, based on the representation of fact by VSI on the PDP which included representations of the quantity or amount of the active or represented main ingredient, and the number of tablets, capsules, chews, or other individual units contained within the package. Excerpts of Record ("ER"), 29-30 (Second Amended Complaint ("SAC")), ¶ 19. For example, a package of L-Arginine-Ornithine stated a quantity of "2000mg" and the package contained "300 capsules." ER 30 (SAC), ¶ 20.

The Magistrate Judge, however, disregarded this allegation, and erroneously concluded that information contained on the SFP was part of the contract. But, in doing so, the Magistrate Judge overstepped his role permitted on a 12(b)(6) motion. It is up to the jury to determine whether a person is bound by certain terms by analyzing "if he has no knowledge of such terms and if, because of the manner in which they were embodied in the instrument, a reasonable person would not be led to suspect that the terms were part of the contract." *Union Oil*, 220 Ore. at 419-20.

Thus, given that the SAC pleaded that the parties entered into a contract based only on the terms set forth on the PDP, the Magistrate Judge erred in concluding that Plaintiff was bound by other terms. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) (allegations of a complaint "[are] read in the light most

favorable to the non-moving party and which, together, with all reasonable inferences therefrom, [are taken] to be true.")

It was especially improper for the Magistrate Judge to make such a finding, given that the facts pleaded in the SAC (read in the light most favorable to, and with all reasonable inferences in favor of, Appellant), support lack of awareness of information contained on the SFP and that a reasonable person likewise would not have believed that it was part of the contract. Appellant pleaded that he was unaware that the package he purchased misrepresented the amount of milligrams per unit of the product and/or the overall amount of the supplement contained within the package. ER 32, 40 (SAC), ¶¶ 28, 71-72. Thus, he was unaware of the information contained on the SFP.

And, Appellant pleaded that a reasonable consumer would conclude that if the PDP displayed 300 capsules of 2000mg, then that package must contain a total of 600,000mg. ER 30 (SAC), ¶ 20. Further, a reasonable consumer would not have been aware of the "take back" contained on the SFP. As pleaded in the SAC, "[i]n much smaller type the on [SFP] located on the back of the bottle or package and shelved to face away from the consumer, Defendant indicated that "serving size" was two capsules…Nothing on the PDP indicated that the 2000 mg dosage was predicated on consumption of more than one capsule, or that it was not an

accurate representation of the quantity …" ER 30-31 (SAC), ¶ 22, 25.[4]

While the *Union Oil* court did find that the defendant was subjected to the liability of the provisions that appeared on the back of a gasoline credit card, it underscored that "[h]ad the issue been properly raised, the foregoing circumstances [e.g., that conditions were printed on the back of the card in small print], together with proof that defendant was not aware of the conditions, would have presented a jury question as to whether the printed conditions constituted a part of the contract." *Union Oil Co.*, 220 Ore. at 419-20.

VSI argues that in *Union Oil,* the "plaintiff company was entitled to the terms of its bargain with those who elected to use its credit cards, assuming of course, as we have, that the bargain was fairly made." But, that portion of the opinion has to do with a separate analysis—addressing defendant's argument that the specific term at issue should be rephrased to accommodate defendant's understanding of such conditions.

VSI further argues that the *A.P. Moller-Maersk A/S v. Taiwan Glass USA Sales Corp.*, 663 F. Supp. 2d 1011 (D. Or. 2009) court found that party was in fact bound by the terms of the back of bills of lading. But, VSI fails to address that in *A.P. Moller-Maersk, after a trial on the merits*, the reason the court found that the

---

[4] These are reasonable allegations because, as discussed in the *Williams* case, as a matter of law, a consumer has no reason to believe that more detail on the back would reveal that the representations on the front are false.

party was so bound was because there was no special circumstance (like here) "when the terms are stated on the back of [an item] [and the person] … has no knowledge of such terms and if, because of the manner in which they are embodied in the instrument, a reasonable person would not be led to suspect the terms were part of the contract."[5] *Id.* at 1015. A dispositive fact in *A.P. Moller-Maersk* was that the "front of the bills of lading call out the existence of the additional terms." *Id.* Here, however, nothing on the PDP of any of the packages at issue put Appellant on notice of additional (and inconsistent) terms to review on the SFP. Moreover, unlike in *A.P. Moller-Maersk*, Appellant has not been given a trial on the merits to resolve disputed issues of fact as to which components make up the contract.

None of VSI's cases—cases involving situations where the parties agree that certain terms are contained in the contract, but disagree as to the meaning of those terms, or their legal effect—support a different result. *See e.g., Phelps v. 3PD, Inc.*, Case No. 08-CV-387, 2008 U.S. Dist. LEXIS 92433 (D. Or. 2008); *Indoor Billboard Northwest, Inc. v. M2 Sys. Corp.*, 922 F. Supp. 2d 1154, 1161 (D. Or. 2013).

_____

[5] This case does not concern an instrument that is stapled together with signatures located on the last page where it is easy to ascertain what terms the parties mutually agreed to.[6] VSI admits that the purpose of ORS § 42.230 is for the district court to consider the contract "as a whole[,] and each provision is to be given effect and interpreted so as to harmonize with the others." BOA 27.

ORS Section 42.230 also does not support a different result. ORS § 42.230 is the codified cardinal rule that courts will give effect to all provisions of a contract; this section allows contract interpretation, not term inclusion/exclusion. *Olson v. Chuck*, 199 Ore. 90, 106 (1953).[6] Section 42.230 only becomes relevant after the factual determination of which terms make up the whole of the contract. *Williams v. RJ Reynolds Tobacco Co.*, 351 Ore. 368, 379-80 (2011); *Yogman v. Parrot*, 325 Ore. 358, 361 (1997). In fact, the express language of Section 42.230 supports its inapplicability here, providing that the judge is "not to insert what has been omitted…" Section 42.230; *see also New Amsterdam Casualty Co. v. Hyde*, 148 Ore. 229 (1934) ("The court has no power to substitute or add conditions to the bond to which the obligor did not agree.")

The inapplicability of Section 42.230 to the case at hand is buttressed by *Union Oil,* and the subsequent *A.P. Moller-Maersk* case, because the rule set forth in those decisions—i.e., determining components of contract is a factual jury issue—was created long <u>after</u> the cardinal rule codified in Section 42.230 was recognized by the Oregon Supreme Court. The Oregon Supreme Court decided *Union Oil* in 1960 and *A.P. Moller-Maersk* was decided in 2009, but the Oregon Supreme Court cited to the aforementioned cardinal rule as early as 1914. *See*

---

[6] VSI admits that the purpose of ORS § 42.230 is for the district court to consider the contract "as a whole[,] and each provision is to be given effect and interpreted so as to harmonize with the others." BOA 27.

*Neilson v. Masters*, 72 Ore. 463, 476 (1914). Section 42.230 was cited to as early as 1957. *See In re Estate of Moore*, 210 Ore. 23, 31 (1957).

An additional and alternative argument can be made that the Magistrate Judge (and consequently, the District Court) erred in considering the SFP as part of the contract because the SFP was procedurally unconscionable.[7]

### C. Claims 2 and 3 for Fraud and Violation of the UTPA Were Improperly Dismissed.

The fraud and UTPA claims were dismissed because the Magistrate Judge (and thus the District Court) presumed that the SFP was part of the whole contract, and that, according to the Magistrate Judge, a fraud claim and a UTPA claim are not viable because the "justifiable reliance" element is not satisfied when one fails to read a contract before signing it. But, there is a disputed issue of fact (which should be decided by the jury) as to whether the SFP is part of the contract. Thus, Appellant's claims could not be barred for failing to read terms when such terms may not have been part of a contract.

---

[7] First, unconscionability is not being used for affirmative relief, but as a tool to ascertain what component (here the SFP) is not part of the contract. Second, whether the SFP is unconscionable requires a factual analysis, and thus, was prematurely rejected at the pleading stage. *See* e.g., *Meunier v. Northwestern Mut. Life Ins. Co.*, 51 F. Supp. 3d 1023, 1034 (D. Or. 2014) (rejecting unconscionability only after plaintiff failed to produce evidence supporting unconscionability). Third, just because the SFP was required by law does not mean, under the factual circumstances here, it or parts of it were not unconscionable. And fourth, assuming that substantive unconscionability is required, it was substantively unconscionable to include terms that contradict other more prominent terms contained on the front of the PDP.

Moreover, as discussed above, under *Williams*, Appellant could have "justifiably relied" given that a reasonable consumer expects that the SFP contains information consistent with the PDP.

### D.    VSI Failed to Comply with FDA Regulations.

To the extent VSI argues that its purported compliance with FDA regulations protects it from liability for violating the common law and the UTPA, VSI cites no authority supporting such a proposition. This is because there is no such authority. As courts have recognized, any compliance with the FDA regulations does not shield VSI from the claims pleaded against it in the SAC. *See* e.g., *Williams*, 552 F.3d at 940.

But, while compliance with the FDA does not shield VSI from liability, failure to comply with the FDA regulations does offer additional grounds to hold VSI liable under the UTPA—violation of a federally imposed duty. *Tri-West Constr. Co. v. Hernandez*, 43 Ore. App. 961, 972 (1979); *see* BOA 45.[8]

Here, VSI violated the FDA regulations by failing to comply with 21 CFR 101.105 because the amount of dietary supplement within the container was not accurately displayed on the PDP. 21 CFR 101.105(a) requires that the "[PDP] of a food in package form…bear a declaration of the *net quantity of contents*" which "shall be expressed in the terms of weight, measure, numerical count, or a

---

[8] Additional bases for holding VSI liable for violation of the UTPA are, as discussed in the AOB, found in ORS 646.608(1)(e), (s), and (u).

combination of numerical count and weight or measure." 21 CFR 101.105(a) (emphasis added). "The net quantity of contents statement for a dietary supplement is the statement that informs consumers of the *amount of dietary supplement that is in the container or package*." *See* SER 20 (Colton Decl., Ex. 1 (Dietary Supplement Labeling Guide) (emphasis added).[9]

Thus, the primary question is whether VSI, on the PDP, accurately identified the amount of dietary supplement in the container. Had VSI identified the total number of milligrams (e.g., 60,000mg of Vitamin C) in the container on the PDP, there would be no dispute because the PDP would accurately identify the "net quantity of content" (i.e., amount of dietary supplement) in the container. VSI, however, chose to use numerical count (e.g., 60 tablets of Vitamin C). According to 21 CFR 101.105(c), "[w]hen the declaration of quantity of contents [located on the PDP] by numerical count does not give adequate information as to the quantity of food in the package, it shall be combined with such statement of weight, measure, or size of the individual units of the foods as will provide such information." 21 CFR 101.105(c).

By identifying the number of tablets, VSI was obligated to provide additional information (e.g., measure of each tablet) so that a consumer knows

_____

[9] VSI argues that it does not need to provide serving size on the PDP. Appellant is not claiming that the serving size must be identified; Appellant is claiming that VSI failed to identify the *net quantity* of contents, which is expressly required to be on the PDP.

exactly how much dietary supplement is being purchased. Stating "60 tablets" does not provide adequate information concerning how much supplement is being purchased, especially because there is no fixed size or fixed measure for a tablet. A tablet could be 1mg, or 10mg, or 500mg, or more. The size or measure of a tablet could vary greatly between different containers and between different brands.

The FDA regulations contemplate that when items are packaged in pill or tablet form, merely providing the quantity of such pills/tablets is insufficient. In the sale of drugs, which come in pill/tablet form, when numerical count is used:

> [t]he drug quantity statement shall be augmented when necessary to give accurate information as to the strength of such drug in the package; for example, to differentiate between several strengths of the same drug '100 tablets, 5 grains each' or '100 capsules, 125 milligrams each' or '100 capsules, 250 milligrams each'. 21 CFR 201.62(a).

VSI, however, relying on FDA warning letters, argues that 101.105(c) is only triggered "where the weight, measure, or size of the individual units within a product package may vary." BOA 23. But while, according to some FDA warning letters, a variation in size of the items is <u>sufficient</u> to trigger 101.105(c), *none* of the FDA warning letters state that the variation in size is <u>necessary</u> to trigger 101.105(c). Put differently, it is flawed logical reasoning to conclude that if variation in size or measure between the items triggers 21 CFR 101.105(c)

(variation ➔ 101.105(c)), then a lack of variation does not trigger 101.105(c) (variation ➔ 101.105(c)).[10]

Other applicable FDA warning letters—not those that VSI happened to cherry-pick—support that a variation in size or measure is not dispositive of whether 101.105(c) is triggered. In these FDA warning letters, 21 CFR 101.105(c) was violated without any mention that the items varied in size. *See* FDA Warning Letter to Med-Diet Laboratories, Inc., Minneapolis District, Subject: "*Food Allergins/Misbranded*" (April 10, 2012); FDA Warning Letter to Dante Confections, New England District, Subject: "*CGMP in Manufacturing, Packing, or Holding Human Food/Adulterated/Misbranded*" (October 5, 2011); *See also* Appellant's Motion for Judicial Notice in Support of Appellant's Reply Brief, Exs. 1 and 2 (attaching the aforementioned FDA warning letters for the Court's convenience).[11] Thus, variation in size is not a dispositive fact in the determination of whether 21 CFR 101.105(c) is triggered.

---

[10] VSI's flawed reasoning is along the lines of: All apples are a fruit, a banana is not an apple; therefore a banana is not a fruit.

[11] The Court can consider these other warning letters because, as admitted by VSI the warning letters are not "facts in[] the record, but instead merely provide the …Court with FDA guidance on how FDA interprets its own regulations." BOA 14. These FDA warning letters could also be accessed at the following web addresses:
http://www.fda.gov/iceci/enforcementactions/warningletters/2012/ucm300954.htm
and
http://www.fda.gov/iceci/enforcementactions/warningletters/2011/ucm281007.htm

Nonetheless, to the extent that some sort of variation in size or measure is necessary, that exists here. VSI is wrong that the intent behind the FDA warning letters was for 101.105(c) to be triggered only if items *within the package* vary in size or measure from other items *within the same package*. Rather, assuming that "variation" is a dispositive fact in order to trigger 101.105(c), additional information must be provided when the items do not come in a standard, fixed size or measure that is *commonly used in the industry*. In other words, when the item— e.g., tablet of Vitamin C, egg roll, crab leg, etc.— is not commonly understood by the consumer to come in a fixed, standard size, but rather, such items could vary from product to product or brand to brand, then additional information must be provided so that the consumer could determine what exactly and how much he or she is paying for.

Just like an egg roll or a crab leg, a tablet (e.g., Vitamin C) can vary in size or measure. It could be 10mg, or 500mg, or 1000mg, or any other measure. A tablet, just like a crab leg or an egg roll, does not trigger in the consumer's mind a standard, fixed weight or measure that applies to all such items sold across the board by supplement companies. Instead, these are all items that could vary in weight or measure from package to package, and from company to company.

Assuming that "variation" is a prerequisite, it is this very type of circumstance that is sufficient to trigger 101.105(c). The FDA warning letters that

VSI relies upon are instructive. For example, in the FDA warning letter issued to Capital Foods, Inc., dated May 17, 2012, the FDA warned:

> Your product label only provides a numeric count. As required by 21 CFR 101.105(c), when the declaration of quantity of contents by numerical count does not give adequate information as to the quantity of food in the package, it shall be combined with such statement of weight, measure, or size of the individual units of the foods as will provide such information. **Count is not sufficient because the weight can vary. The net quantity of contents must include the net weight**.[12]

SER 71 (Colton Decl., Ex. 8 (Capital Foods, Inc., May 17, 2012 Warning Letter)) (emphasis added); *see also* SER 66 (Colton Decl., Ex. 7 (Chung's and Son Company, March 19, 2012)) (similar verbiage).

Thus, 101.105(c) is sufficiently triggered when the items in question that are being quantified can vary generally in size or measure (as opposed to having an industry standard fixed weight or measure). It is in these circumstances where the consumer, based on the information provided on the PDP, cannot ascertain the net quantity of contents.

---

[12] VSI, in quoting from this particular warning letter, adds words in brackets, stating that this FDA warning letter found that the numerical count was "not sufficient because the weight [of the shrimp egg rolls *in question*] can vary." BOA 24 (emphasis added). Adding these few words completely changes the reasoning behind this particular warning letter, which was to find a violation of 101.105(c) when the items, *in general*—not just those "in question" contained in the package—can vary in weight.

### E.    Claim 4, for Unjust Enrichment, was Improperly Dismissed.

VSI does not refute, nor even addresses for that matter, that FRCP 8(d)(3) provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." FRCP 8(d)(3); *see also Motorola, Inc. v. AU Optronics Corp.*, 785 F. Supp. 2d 835, 847 (N.D. Cal. 2011); *see also Treefrog Devs., Inc. v. Seidio, Inc.*, 2013 U.S. Dist. LEXIS 110760, *23, n.5 (S.D. Cal. Aug. 6, 2013).

Instead, VSI relies on Oregon law, but such law further supports that at the pleading stage, a "plaintiff [is] entitled to plead alternatively on an express contract and in quantum meruit [i.e. unjust enrichment] without having to elect the theory upon which it would rely." *See Mount Hood Cmty. College v. Fed. Ins. Co.*, 199 Ore. App. 146, 158 (2005), citing *Kashmir*, 289 Ore. at 592 ("we have frequently held that a plaintiff may plead alternatively on an express contract and in quantum meruit…"). As explained in *Kashmir*, the "wisdom of the rule is apparent" that "a party may present his case in the alternative." *Id*. That is because "[i]n many cases a reasonable doubt may exist in the mind of the pleader whether there was an express contract, and, if so, whether his evidence is sufficient to establish it. In such cases a prudent pleader will so frame his pleading as to admit proof and to permit a recovery upon either ground." *Id*.

And here, doubt exists whether there is an express contract because, as explained in the AOB, there is no contract if there is no mutual meeting of the

minds as to what terms are part of the contract.  *Cook v. The MV Wasaborg*, 189 F. Supp. 464, 468-469 (D. Or. 1960); *Joseph v. Donover Co.*, 261 F.2d 812, 823, n.11 (9th Cir. 1958); *Deering-Milliken & Co. v. Modern-Aire of Hollywood, Inc.*, 231 F.2d 623, 625-26 (9th Cir. 1955); *see also Kretz v. Howard*, 220 Ore. 73, 346 P.2d 93 (1959).  This doubt is not only supported by the law, but was also the position taken by VSI before the Magistrate Judge:

> When we say there's not a contract, what we mean is there's not a contract based on what they allege to be the offer.  In other words, the offer being only the front panel, the principal display panel… if that principal display panel is the offer, then our position is there is no contract based on that offer… Appellant's Further Excerpts of Record ("FER") 2 (February 11, 2015 hearing transcript), 23:14-24.[13]

VSI's cases relied upon to support that the unjust enrichment claim should have been dismissed at the pleading stage are inapposite.  VSI cites to *DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Stanford*, 868 F. Supp. 2d 1042, 1054 (D. Or. 2011) for the proposition that a claim for unjust enrichment cannot stand even when the parties dispute the meaning of a contractual term.  BOA 40. But, here, there is no dispute over the meaning of a contractual term, the dispute centers on whether a term is part of the whole contract.

---

[13] VSI, in its brief, contends that "it is undisputed that a contract between the parties exists."  BOA 10.  This is in stark contrast to the position that VSI took before the Magistrate Judge.

Unlike here, *Kashmir*, 289 Ore. at 592, *Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021 (D. Or. 2012), and *N. Clackamas County Water Comm'n v. Siemens Water Techs. Corp.*, 2014 U.S. Dist. LEXIS 4411, *20 (D. Or. 2014) involved situations where the defendant admitted that there was an enforceable contract.

And in *Commerce & Indus. Ins. Co. v. HR Staffing, Inc.*, 2014 U.S. Dist. LEXIS 141637 (D. Or. 2014), the unjust enrichment claim was dismissed because, unlike here, plaintiff did not plead other pertinent facts supporting the unjust enrichment. *Id.* at *8 ("[i]n the absence of facts from which this Court may reasonably infer the existence of a benefit and [defendant's] awareness that it had received that benefit, [plaintiff] cannot state a claim of unjust enrichment.")

### F. Appellant Has Not Waived Any Legal Arguments Raised in the Appellate Brief.

VSI argues that Appellant waived various claims of error before this court by not raising such claims in his objection to the District Court. But, the two cases upon which it relies—*Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999) and *Smith v. Conway*, 582 Fed. App'x 45, 46 (2d Cir. 2014)— run contrary to Ninth Circuit standards. While it is true that failure to object to a magistrate judge's *factual findings* waives the right to challenge those findings, "it is well settled law in this circuit that failure to file objections … does not automatically waive the right to appeal the district court's conclusions of law." *Miranda*, 684 F.3d at 848 (internal brackets and quotations omitted), quoting

*Lisenbee v. Henry*, 166 F.3d 997, 998, n.2 (9th Cir. 1999); *see also Dupree v. Warden*, 715 F.3d 1295, 1302 (11th Cir. 2013) (acknowledging the *Miranda v. Anchondo* decision). At most, a failure to object to the Magistrate Judge's findings is a factor to be weighed in considering the propriety of finding waiver of an issue on appeal, but, when the specific argument is raised in the AOB, that party is "entitled to the ordinary presumption that failure to object to the magistrate judge's report, standing alone, do[e]s not constitute waiver." *Miranda*, 684 F.3d at 848 (internal quotations omitted).

Here, Appellant is appealing the District Court's decision to "Adopt[] Magistrate Judge Papak's Findings and Recommendation…" (ER 6), in which Magistrate Judge Papak incorrectly decided to make factual findings—something that he was not allowed to do on a 12(b)(6) Motion. Appellant is not appealing the factual findings made by the Magistrate Judge; he is appealing the propriety of making such findings.[14] Therefore, the presumption is that there was no waiver given that the issues were raised in the AOB.

### G. The District Court Should Have Granted Leave to Amend.

Preliminarily, VSI exaggerates the number of attempts that Appellant had to plead sufficient facts in a complaint. The material change between the Complaint and the First Amended Complaint was (a) dropping one of the plaintiff's claims

---

[14] VSI contends that the Magistrate Judge did not make factual findings.

brought under the California consumer protection statute (b) and eliminating the Jane Roe plaintiff, and (c) naming the correct Vitamin Shoppe entity as the defendant. And the SAC stated for the first time claims for fraud and unjust enrichment. SER 140-41 (Response to VSI's Motion to Dismiss SAC); *see also* FER 5-56 (Complaint and First Amended Complaint). This action should not have been dismissed without the Court having provided leave to amend at least once prior.

Furthermore, it is improper to invoke a futility argument based on Rule 56(f)(2) at the pleading stage when a claim was deemed insufficient on a 12(b)(6) motion. In the Ninth Circuit, in the context of a 12(b)(6), generally "leave to amend is *only* denied when it is *clear* that the deficiencies of the complaint cannot be cured by amendment." *Arruda v. C&H Sugar Co.*, 2007 U.S. Dist. LEXIS 16519, *5-6 (E.D. Cal. 2007) (emphasis added), citing *Desoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Thus, while a court can deny leave to amend based on futility, it may do so "*only* if the proposed amendment would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6)." *Barnett v. County of Contra Costa*, 2010 U.S. Dist. LEXIS 68864, *12-13 (N.D. Cal. 2010) (emphasis added), citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency

of a pleading challenged under Rule 12(b)(6)"); *see also Deadmon v. Grannis*, 2008 U.S. Dist. LEXIS 15587 (S.D. Cal. 2008).

VSI's out-of-circuit authorities supporting futility based on a summary judgment standard run contrary to Ninth Circuit standards. Nonetheless, each of these cases involved situations where the *undisputed facts after* Plaintiff had an opportunity to submit facts from outside of the pleadings led to the conclusion that amendment would be futile because plaintiff could not prevail on a motion for summary judgment. *See* e.g., *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 561 (10th Cir. 1997); *Wilson v. Am. Trans Air, Inc.*, 874 F.2d 386, 391-92 (7th Cir. 2006); *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354-55 (Fed. Cir. 2006). Here, however, Appellant was not provided an opportunity to submit additional facts or evidence.

VSI further argues that Walters only requested leave to substantively amend two claims and that Walters has consequently waived the right for this Court to order leave to amend. Preliminarily, the cases that VSI relies upon only stand for the proposition that it is too late to ask the appeal court for leave to amend when such leave is not sought in the lower court. But here, as admitted by VSI, leave to amend was sought. Even if it was only sought for one claim, leave to amend was still sought, and thus, leave to amend as to all claims is preserved.

Nonetheless, Appellant did request leave to amend all claims that are at issue

on this appeal. Specifically, in opposition to VSI's Motion to Dismiss, Appellant sought "**leave to amend his SAC** to add a claim **for** monetary damages under the UTPA and **all other claims for the Oregon class members**." SER 159 (emphasis added).

Further, at the hearing, Appellant's counsel stated that more facts could be pleaded if leave to amend is granted: "I'm going to suggest that if you think the level of specificity [VSI's counsel] is talking about is required under *Iqbal*; that it's not fair and we need to amend…I don't disagree with that if that's what you think." FER 3 (February 11, 2015 hearing transcript), 36:6-18.

## III.   **CONCLUSION**

Because VSI seeks for this Court to overturn established Ninth Circuit precedent, and because the dismissal of each of the claims and of the action as a whole was improper, Appellant respectfully requests that the Court vacate the Judgment of the District Court, and reinstate all of Appellant's claims.

DATED: March 11, 2016              **FOLEY BEZEK BEHLE & CURTIS LLP**
                                                    **BRADY MERTZ PC**
                                                    **RICK KLINGBEIL PC**

                                          By:  */s/ Justin P. Karczag*
                                                    Robert A. Curtis
                                                    Justin P. Karczag
                                                    Brady Mertz
                                                    Rick Klingbeil
                                                    *Attorneys for Appellant*
                                                    *and the Putative Class*

## CERTIFICATE OF COMPLIANCE

In accordance with Rule 32(a)(7) of the Federal Rules of Appellate Procedure, the undersigned certifies that the accompanying brief has been prepared using 14-point Times New Roman typeface and uses double spacing (except for headings, footnotes, and certain quotations).

The undersigned further certifies that the brief is proportionately spaced and contains 6,968 words, exclusive of the table of contents, table of authorities, signature lines, and certificates of compliance and proof of service. The undersigned used Microsoft Word for Mac 2011 to compute the word count.

DATED: March 11, 2016  **FOLEY BEZEK BEHLE & CURTIS LLP**
           **BRADY MERTZ PC**
           **RICK KLINGBEIL PC**

           By: _/s/ Justin P. Karczag_
             Robert A. Curtis
             Justin P. Karczag
             Brady Mertz
             Rick Klingbeil
             *Attorneys for Appellant*
             *and the Putative Class*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellant certifies that there are no known related cases pending in this Court.

DATED: March 11, 2016        **FOLEY BEZEK BEHLE & CURTIS LLP**
**BRADY MERTZ PC**
**RICK KLINGBEIL PC**

By:  */s/ Justin P. Karczag*
       Robert A. Curtis
       Justin P. Karczag
       Brady Mertz
       Rick Klingbeil
       *Attorneys for Appellant*
       *and the Putative Class*

9th Circuit Case Number(s) 15-35592

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Mar 11, 2016 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)    s/Justin P. Karczag

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)